## EIKENBERRY *v.* NEHER

[No. 18,828.   Filed June 5, 1956.]

*Cook & Cook,* of Kokomo, for appellant.

*Allen A. Appleton,* of Frankfort, and *Rochford, Blackwell & Rochford,* of Indianapolis, for appellee.

KENDALL, C. J.—Action by appellee to recover damages for personal injuries received by her while a guest in appellant's automobile as a result of guilty and wilful and wanton misconduct on the part of appellant.

Trial by court resulted in a decision favoring appellee for Twenty Five Hundred ($2,500.00) Dollars upon which judgment was rendered.

New trial motion, which was overruled, contained seventeen (17) specifications. On appeal, the only two specifications urged are that (a) the decision of the

court is not sustained by sufficient evidence; (b) the decision of the court is contrary to law.

The assignment of error is the overruling of the new-trial motion.

The appellee is a sister of appellant's wife, who, on the day of the accident, had invited appellee and her son to go with them to South Bend. It is undisputed that appellee went along for the trip and that she was a gratuitous guest of appellant and his wife. The appellant and his wife were in the front seat; the appellee and her son, in the rear seat at the time of the accident. Up until the time of the accident no complaint had been made as to appellant's manner of driving. The acts of wilful and wanton misconduct are (1) that appellant drove to the left side of the highway when he knew he didn't have sufficient clearance to pass; (2) that appellant crossed the center line when Ortman was coming forward in plain view; (3) that appellant drove toward the Ortman car after he saw it coming toward him; (4) that appellant drove at a great and dangerous speed.

Sec. 47-1021, Burns' Stat., 1952 Replacement, is as follows:

> "Guests of owner or operator—Right to damages.
> —The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle."

We, thusly, are confronted with a frequent question as to the meaning of the words, "wanton and wilful

misconduct". We find no clearer definition than that given in the case of *Bedwell* v. *DeBolt* (1943), 221 Ind. 600; 50 N. E. 2d 875, in which the Supreme Court approved the language used by this court in the same case (47 N. E. 2d 176) which is:

" 'Blashfield has defined 'wanton misconduct' as 'the intentional or wanton disregard of the safety of others, and is manifested by conduct which is of such a character as to indicate the autoist's indifference to the consequences of his acts.' The same author defines 'wilful misconduct' as 'the intentional doing of something which should not be done, or intentional failure to do something which should be done, in the operation of the automobile, under circumstances tending to disclose the operator's knowledge, express or implied, that an injury to the guest will be a probable result of such conduct.' Blashfield, Cyc. of Automobile Law & Practice, Permanent Ed., Vol. 4, § 2322, pp. 109 and 110.

" 'Berry, in his work, defines 'wanton conduct' as follows: ' "Wantonness" ' . . . is the conscious doing of some act or the omission of some duty with knowledge of existing conditions, and conscious that, from the act or omission, injury will likely result to another.' Berry, Automobiles, Seventh Ed., § 2.340. There would seem to be little, if any, difference in the definition of 'wantonness' by Berry and the definition of 'wilfulness' by Blashfield. While the word 'wilful' may be used in a broader sense than the term 'wanton,' we are of the opinion that the meaning of the two words, as used in the Guest Statute, is closely synonomous.

" 'In determining what constitutes a 'wilful' or 'wanton' act, we subscribe to the view that it is not necessary to prove that defendant deliberately intended to injure the plaintiff; it being sufficient if it is shown that, indifferent to consequences, the defendant intentionally acted in such a way that the natural and probable consequences of his act was injury to the plaintiff. *Baines* v. *Collins* (1942), 310 Mass. 523, 38 N. E. (2d) 626, 138 A. L. R. 1123. See also the Restatement of Law on Torts, § 500,

page 1293. And further, acts such as exhibit a conscious indifference to consequences, make a case of constructive or legal wilfulness. *Kahan* v *Wicksler* (1938), 104 Ind. App. 673, 12 N. E. (2d) 998; *Jeneary* v. *Chicago & Interurban Traction Co.* (1923), 306 Ill. 392, 138 N. E. 203; *Reell* v. *Central Illinois Electric & Gas Co.* (1942), 317 Ill. App. 106, 45 N. E. (2d) 500. To hold one guilty of 'wilful' or 'wanton' conduct, it must be shown that he was conscious of his conduct and with knowledge of existing conditions that injury would prob-. ably result, and with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some duty which produced the injuries. *Murphy* v. *Snyder* (1939), 63 Ohio App. 423, 27 N. E. (2d) 152; *Bartolucci* v. *Falletti* (1942), 314 Ill. App. 551, 41 N. E. (2d) 777. Ill will is not a necessary element. *Bernier* v. *Illinois Cent. R. Co.* (1921), 296 Ill. 464, 129 N. E. 747, affirming 215 Ill. App. 454.' " *Kirsch* v. *Harker* (1950), 120 Ind. App. 66; 89 N. E. (2d) 924; *Lee Brothers* v. *Jones* (1944), 114 Ind. App. 688; 54 N. E. (2d) 108.

With these definitions in mind, we proceed to view the present case as to whether or not there is substantial evidence of probative value to uphold the trial court's finding that appellant intentionally acted in such a way that under the circumstances the natural and probable consequences of his driving would result in injury to appellee.

The evidence most favorable to appellee reveals that at about 5:30 p.m., on November 19, 1952, appellant was driving his car in a southerly direction on State Highway #29. The appellant had followed a semi truck which was travelling southward on said highway for approximately two miles to a point about one and one-half miles south of Middlefork in Clinton County, Indiana, when the accident occurred. The weather was foggy, misty and a little rainy, pave-

ment being damp. Appellant testified that it was getting late and he was in a hurry to get home. He, desiring to pass the semi, pulled to the left portion of the highway and into that portion thereof for vehicles going in a northerly direction. When he reached a point about equal in position on the road with the semi, appellant saw lights of a vehicle approximately one hundred to one hundred and fifty feet away, coming from the south and proceeding in a northerly direction, which car was operated by a Mr. Ortman. There is some conflict as to the exact distance away the Ortman car was when first observed by appellant as well as conflicting as to whether or not the Ortman car was zig-zagging. There was evidence that appellant was driving between forty to fifty miles-per-hour at the time of collision, and the truck at approximately thirty-five miles-per-hour. The evidence is such that reasonable inference can be drawn that appellant was unable to pass the semi in view of the approach of the Ortman car. Appellant contended that he could not drop back into his former position on the right-hand portion of the highway on account of other cars following the semi, which accounted for heading his car for the berm on the east side of Highway #29, and, while in the course thereof, collided with the Ortman car, resulting in the Ortman car ending up on the west side of the highway headed south. When the appellant's car was about equal with the semi, his wife exclaimed that they were going to get hit. At the location of the accident, the road was level; however, there was testimony that there was a slight raise at about the point of impact. Mr. Ortman testified that appellant's car showed no marks indicating application of brakes. This was denied by appellant who said he applied the brakes. The appellee was asleep in the back seat of the car and did not see anything that occurred.

It is undisputed that the semi was on the right-hand side of the road at all times. The evidence is such that the court could rightfully infer that appellant knew he was going to get hit before he was even with the semi truck as shown by his examination:

"Q: You say that just before you applied your brakes and just before you started for the berm that Mrs. Eikenberry said, 'Look out you are going to get hit'?
"A: Yes sir.
"Q: Well, you knew that yourself before then, didn't you?
"A: I seen I was going to get hit, yes."

It is undisputed but what Mr. Ortman was where he had a right to be. The only lights he saw coming from the north were those of the semi and appellant's vehicle. In view of appellant's contention that he could not pull back into his proper line of travel without being hit, it is worthy of note that the Ortman car careened across the road to the west side without being struck by any other vehicle travelling in a southerly direction.

Appellant relies upon the case of *Hoesel* v. *Cain* (1944), 222 Ind. 330, 53 N. E. 2d 165. The facts of that case are distinguishable from the one under consideration. In the Hoesel case there was a change of course on the part of the appellant to avoid the accident, while in this case, there is no evidence that appellant made any effort to get back into the proper line of travel or perform any act of changing his continuous conduct evidencing a concern for others in his car. To the contrary, he started for the berm on the east side of the road when in fact the third car, driven by Ortman, was almost there. The Hoesel case

is authority for appellee's contention wherein the court said:

> "If he had then persisted in his course, we could ascribe to him such conscious indifference to consequences as to constitute wanton misconduct."

Appellant argues that wilful and wanton misconduct under the Guest Statute imports knowledge of the facts, and that, without knowledge which give rise to a duty, that failure to perform such duty is not wilful or wanton and that the appellant had no knowledge that when he pulled out to the left from behind the semi, a third car was approaching and that in the absence of such knowledge, the fact of pulling to the left side of the road constituted nothing more than negligence for which, under the Guest Statute, there is no liability.

In the case of *Trent* v. *Rodgers* (1952), 123 Ind. App. 139, 104 N. E. 2d 759, quoted with approval in the case of *Rickner* v. *Haller* (1954), 124 Ind. App. 369, 116 N. E. 2d 525, this court said:

> "In order to hold the host driver liable by reason of wilful and wanton misconduct, his knowledge of existing conditions and consciousness that from his act or omission injury will likely result to another, is not the knowledge of a particular fact or knowledge that a motor vehicle was approaching at such time and place, at such speed and so closely that it *could not pass* "(emphasis of the court), but it is sufficient if such host driver have a consciousness of conditions obtained through the exercise of his senses and *knowledge of the likelihood of an injury to his guest as a result of his conscious acts*." (Our emphasis.)"

While it is true that appellant said he did not see the Ortman car until he had pulled to the left side of

the highway and was nearly equal in position with the semi, yet the trial court was confronted with the evidence that appellant was conscious of the fact that he was travelling behind a semi between forty to fifty miles-per-hour when the weather was foggy, the highway wet, it was getting late and he was in a hurry and the fact that when he saw he was going to be hit, did not slack his speed, neither did he drop back into his line of traffic. There was, therefore, some evidence before the trial court warranting a reasonable inference that (1) appellant crossed the center of the highway and into the path of the motor vehicle driven by Mr. Ortman in a northerly direction with a conscious indifference as to the likelihood of injury to his guest; (2) that by the exercise of ordinary care, appellant could have determined before pulling to the left side of the highway whether or not there were other motor vehicles proceeding in a northerly direction; (3) that appellant drove toward the Ortman car after he saw it coming toward him, during which time it was apparent that probable injury would result to the guest. Under all the facts as presented, we believe that the evidence was such that the trial court was warranted in finding that by the continuous course of conduct as demonstrated by appellant, he exercised no concern for his guest, thus exhibiting a conscious indifference to the consequences of his act, and, therefore, such conduct was both wilful and wanton. *Miller* v. *Smith* (1955), 125 Ind. App. 293, 124 N. E. 2d 874.

In our opinion, the evidence can reasonably be interpreted as tending to prove a "wanton and wilful misconduct", as defined by our case law. *Rickner* v. *Haller, supra.* The question therefore becomes one of fact for, in this case, the trial court to determine. The trial court having done so, we cannot weigh the evidence and sub-

stitute our finding for that of the trial court. *Pierce* v.
*Clemens* (1943), 113 Ind. App. 65, 46 N. E. 2d 836.

Judgment affirmed.

NOTE.—Reported in 134 N. E. 2d 710.