## SAUSAMAN *v.* LEININGER.

[No. 29,616. Filed December 12, 1957. Rehearing denied January 22, 1958.]

*R. J. Wildman, Cole, Wildman & Cole,* of Peru, and *Alfred H. Plummer,* of Wabash, for appellant.

*Charles C. Campbell* and *Arthur Metzler,* both of Rochester, for appellee.

ACHOR, J.—This action was instituted by appellee for recovery of damages for personal injuries sustained while riding as a guest in a 1938 Ford operated by appellant.[1] Trial by the court resulted in a finding and judgment favoring appellee for $7,000.00.

Motion for new trial contained five specifications. The only grounds relied upon on appeal are that the decision is not sustained by sufficient evidence and is contrary to law.

The alleged acts of wanton or wilful misconduct of appellant which proximately caused the injuries to appellee are as follows: The appellant, who lacked two months of being 18 years of age, was driving an automobile owned by his uncle, which was used by appellant for pleasure. The car was so constructed that when the key was removed a pin would be inserted by a spring in a hole in the steering column and lock the wheel when the wheel was turned. On this occasion appellant left the Akron high school with some of his friends, one of whom was the appellee, for a drive through the country. In returning to Akron appellant drove in a southerly direction on State Road 19. When he was

---

1. "The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle." §47-1021, Burns' 1952 Repl.

five to seven hundred feet north of the city limits and traveling from 50 to 65 miles per hour, appellant pulled out the ignition key and caused the car to coast into town with the key removed. At the city limits there was a 35 to 40 degree curve in the road. Appellant turned the car into this curve which caused the steering wheel to lock. Thereafter the car traveled about 125 feet when it hit a tree. At that time the car was traveling 35 to 40 miles per hour. Appellee was injured as a result of this collision.

Appellant urges that the decision is contrary to law for lack of evidence, in that there is no evidence showing wanton or wilful misconduct in the operation of the car. Appellant contends that his action was neither wanton or wilful within the meaning of the statute for the reason that he alone knew his state of mind and that his testimony is uncontradicted that he had "tried the ignition key many times and had found the lock (mechanism) did not work," and that when he drove the car with the key out the probability of causing injury to his guests "was the least of my thoughts." Consequently, appellant contends, under the circumstances the operation of the car with the key removed, constituted no more than a "mistake of judgment," for which there was no liability under the guest statute (§47-1021, Burns' 1952 Repl.).

However, we are confronted by the fact that (1) the jury had a right to disbelieve appellant's testimony regarding his knowledge of the operation of the car[2] and (2) that appellant was chargeable with the knowledge of reasonable men regarding the

---

2. ". . . The assertions that he had no opportunity to discuss matters with his attorney and that the attorney did not advise appellant of his constitutional rights are not expressly denied, but it does not necessarily follow that the evidence furnished no conflict as to that, or that the trier of the facts was required to

probability of injury resulting from his conduct. Appellant testified that he understood that the steering mechanism was supposed to lock the front wheels when in three positions, namely, center, left or right, and that from his observation he believed the mechanism was not working. However, this was inconsistent with the testimony of another occupant of the car, who had frequently ridden in the car and understood that the mechanism locked when the wheels were turned.

Furthermore, appellant's own testimony was that he

accept appellant's statement in that regard as true. . . . It is not always necessary to accept such testimony as true simply because it is not directly contradicted or denied by other testimony. The trial court had the right to consider the interest of the appellant, the probability or improbability of his assertions in the light of proved or admitted facts, his apparent forthrightness or lack thereof, the conditions and compulsions under which he testified, his wishes and desires and the probable effect upon him of a favorable or unfavorable decision. . . . If, taking into consideration these and other factors, the uncorroborated statements of this appellant did not carry conviction, we think the court was entitled to disbelieve his assertions that his constitutional rights were not explained to him by his attorney. . . . If the uncorroborated statements of a man so vitally interested in the result must be accepted as true merely because such assertions have not been expressly denied, and when other facts and circumstances point in a different direction, it would obviously furnish a ready avenue of escape for any and all who had been convicted and imprisoned." *Schmittler* v. *State* (1950), 228 Ind. 450, 464-465, 93 N. E. 2d 184.

" 'The jury is the judge not only of the weight of the evidence, but also of the credibility of the witnesses. . . . When a material fact is supported only by the uncorroborated testimony of a single witness, there is no reason why the jury should not subject the credibility of such witness to proper tests, even though his testimony is not contradicted by that of any other witness. If, as a result of such tests, honestly and fairly applied, the jurors are unable to believe the testimony of such witness, it is not only within their power, but also it is their duty, to reject it. . . .'

" '. . . . Among the factors that may be considered in determining the credit to be given to the testimony of a witness are: The interest of the witness, if any, in the outcome of the trial; his bias and prejudice, if any is shown; his opportunity for knowing and recollecting the facts about which he testified; the probability or improbability of his testimony; and his demeanor while on the witness stand. *Lynch* v. *Bates* (1894), 139 Ind. 206, 38 N. E. 806; *Fox* v. *Barekman* (1912), 178 Ind. 572, 99 N. E. 989." *McKee* v. *Mutual Life Ins. Co. of New York* (1943), 222 Ind. 10, 13, 15, 51 N. E. 474.

never really made a careful check of the car to determine whether the steering apparatus would lock when the key was removed and the wheels turned to a substantial degree, as it was made to do. By his own testimony, he had driven the car *once*, when he had "made a *slight curve*," and had tried it in his driveway two or three times. Significantly he did not state that he ever tried it when the wheels were turned more than slightly. In fact, his own statement was, "I never went into detail with it."

Yet, on this occasion, knowing that the car was constructed in such a manner that the steering wheel would lock when the key was removed, and also knowing of the sharp curve in the road, appellant consciously and intentionally removed the key while driving at a high rate of speed and turned the car sharply into the curve causing the wheels to lock and the collision to occur.

Can we say as a matter of law that this action did not constitute "wanton or wilful misconduct"? The rule with regard to such conduct has been generally stated as follows:

> "In order to constitute willfulness or wantonness within the meaning of this rule, the acts or conduct of the operator of the motor vehicle causing the injury must be done under circumstances which show that the operator is aware, from his knowledge of existing conditions, that it is probable that injury will result from his acts or omissions, and nevertheless proceeds with reckless indifference as to the consequences, or acts without consideration for others on the highway or without care for their safety, but it is not necessary that the driver should have any ill will toward the person injured or that he intend to cause or deliberately cause, the accident or injury in question. More precisely, it has been held that there is a distinction between the terms 'willful' and 'wanton,'

as used in such cases, in that 'willful' implies intent or purpose, while 'wanton' expresses a reckless disregard of consequences." 60 C. J. S., Motor Vehicles, §258, p. 631. See: *The Lafayette and Indianapolis Railroad Company* v. *Huffman* (1867), 28 Ind. 287; *The Terre Haute and Indianapolis Railroad Company* v. *Graham* (1883), 95 Ind. 286.

The rule has been stated by our courts as follows:

"Willful or wanton misconduct consists of the conscious and intentional doing of a wrongful act or ommission of a duty, with reckless indifference to consequences, under circumstances which show that the doer has knowledge of existing conditions and that injury will probably result." *Becker* v. *Strater* (1947), 117 Ind. App. 504, 506, 72 N. E. 2d 580. See also: *Bedwell* v. *Debolt* (1943), 221 Ind. 600, 50 N. E. 2d 875.

Appellant asserts that, inherent to the rule as above stated, there must be some "perverse motive" on the part of the driver, such as malice or wilfulness, as related to the probability of injury to his guests, and that no such motive existed on the part of this appellant. We concur in the fact that to constitute "willful or wanton misconduct" there must be a "perverse motive," in that the misconduct must be conscious and intentional and of such a nature that under the known existing conditions injury will probably result therefrom. However, as heretofore stated, this does not mean that the wrongful conduct of the driver must be motivated by malice, ill will, or intent to injure. Our statute (§47-1021, *supra*) uses the words "wanton or wilful" in the disjunctive. Therefore, it is sufficient to meet the condition of the statute if the misconduct is *wanton.*

The fact that appellant was a youth and that wanton impulses may be natural to young people does not ex-

cuse appellant of his misconduct. Neither does his immaturity excuse his failure to contemplate the consequences of his act. There is nothing in the statute which indicates a legislative intent that we should place one construction on the statute as applied to young people and another to adults. Therefore, in determining whether the driver of a motor vehicle had knowledge that injury would probably result from his wanton misconduct, responsibility for such knowledge must be measured by the standard with which reasonable men of ordinary intelligence are chargeable under the circumstances. Under our statute no person, young or old, can operate an automobile on the public highway in a manner controlled by wanton impulse or motive, under conditions known likely to produce injury, without being legally responsible to his guests for injuries caused thereby.

Here the jury, which, we assume, was composed of ordinarily reasonable men, had evidence before it from which it might believe that appellant consciously and with reckless indifference to the consequences, drove his car with the key removed. He was chargeable, as are reasonable men of ordinary intelligence, with knowledge that his conduct was accompanied by a high degree of probability that injury to his guests would result therefrom. Under these circumstances this court is not at liberty to disturb the verdict of the jury. *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N. E. 2d 836.

Judgment affirmed.

Emmert, C. J., and Arterburn, J., concur.

Bobbitt, J., dissenting with opinion.

Landis, J., not participating.

## DISSENTING OPINION

BOBBITT, J.—This case is before us on petition to transfer. I think the petition should be denied, and I dissent from the majority opinion for the reasons stated in the Appellate Court opinion as it appears in *Sausaman* v. *Leininger* (1956), 137 N. E. 2d 547.

NOTE.—Reported in 146 N. E. 2d 414.