MAZZA B/N/F *v.* KELLY.

[No. 669A102. Filed May 18, 1970.]

*John F. Townsend, Jr., Townsend and Townsend,* of counsel, both of Indianapolis, for appellant.

*Thomas P. Ledgerwood, John A. Young, Rocap, Rocap, Reese & Young,* of counsel, all of Indianapolis, for appellee.

SULLIVAN, J.—The action below was brought by appellant against appellee for damages for personal injury arising out of an automobile accident. Appellant was conceded to be a guest being transported without payment in the automobile driven by appellee. Trial was had by jury and after the appellant rested his case in chief the defendant-appellee filed a written motion for a directed verdict, which motion the court sustained. The court thereupon instructed the jury accordingly and the jury returned its verdict for appellee. This appeal followed.

Plaintiff-appellant's complaint alleged that the injuries sustained were proximately caused by acts of wanton misconduct on the part of defendant-appellee. Under such circumstances, we must consider only the evidence most favorable to the plaintiff-appellant, together with all reasonable inferences which may have been drawn therefrom. Unless this court can say that such evidence as a matter of law, would require reasonable men to conclude that the acts of defendant-appellee did not constitute wanton misconduct, we must reverse the decision and judgment below. *Clouse* v. *Peden* (1962), 243 Ind. 390, 186 N. E. 2d 1; *Orey* v. *Mutual Life Insurance Co.* (1939), 215 Ind. 305, 19 N. E. 2d 547; *Smith* v. *Russell* (1969), 146 Ind. App. 157, 253 N. E. 2d 268; *Phares* v. *Carr* (1952), 122 Ind. App. 597, 106 N. E. 2d 242.

The evidence most favorable to plaintiff-appellant is substantially as follows:

On the morning of May 26, 1963, six young people, including plaintiff and defendant, rode in an automobile from Indianapolis to Brown County State Park for a picnic. The automobile was owned by defendant's brother and was being operated by defendant. Before the automobile arrived at the Park but when it was near the Park area, one of the passengers warned defendant to slow down.

After horseback riding at the Park, the young people decided to go to the Park's Abe Martin Lodge for their picnic. As they left the horseback riding area and proceeded toward the Lodge, defendant was operating the automobile with his date next to him in the front seat. Plaintiff was seated on the left side of the rear seat and his date was next to him. Another couple was also in the rear seat. The road from the riding stable to the Lodge was winding and hilly. Trees lined the road close to its shoulders. The road's surface was asphalt with gravel shoulders. The automobile was on this road from three to five minutes from the time it left the horseback riding stables to the time of the accident. Defendant was driving at least forty miles per hour. The car was sliding around the curves and the tires were squealing. Plaintiff braced his hand against the top edge of the window opening to keep himself from falling over upon the other persons in the rear seat. All occupants of the automobile warned defendant to slow down, including Kathy Kelly, defendant's sister, which warnings were ignored by defendant. Plaintiff made a second complaint insisting loudly that defendant slow down. Defendant acknowledged these warnings only by saying something like, "Everything's OK". Defendant did not slow the automobile, or if he slowed it momentarily, had resumed speed by the time he reached the next curve. There was a sharp curve to the left at the bottom of a particular hill at which point the car started to slide broadside. In the course of the slide, the car's speed was approximately forty miles per hour. The tires

caught and the car rolled over. Plaintiff's hand was injured in the accident.

Quite clearly, speed in and of itself is not sufficient to establish wanton misconduct on the part of the driver. See *Buroker* v. *Brown* (1961), 241 Ind. 421, 172 N. E. 2d 849. Several essential elements must be present before a trier of fact would be justified in finding the existence of wanton misconduct on the part of a vehicle operator. Our Supreme Court set forth these essentials in *Clouse* v. *Peden, supra,* at page 397:

> " 'To be guilty of *wanton* misconduct within the meaning of the statute, the driver must (1) be conscious of his misconduct; (2) be motivated by a desire to assert himself or his interests above or beyond, or in reckless indifference for, the safety of his guest, and (3) he must do so knowing that his conduct subjects them to a . . . probability of injury.' [Our italics.]"

In *Sausaman* v. *Leininger* (1957), 237 Ind. 508, 513, 514, 146 N. E. 2d 414, our Supreme Court said:

> "* * *The rule with regard to [wanton or wilful misconduct] has been generally stated as follows:
>
> 'In order to constitute willfulness or wantonness within the meaning of this rule, the acts or conduct of the operator of the motor vehicle causing the injury must be done under circumstances which show that the operator is aware, from his knowledge of existing conditions, that it is probable that injury will result from his acts or omissions, and nevertheless proceeds with reckless indifference as to the consequences, or acts without considerations for others on the highway or without care for their safety, but it is not necessary that the driver should have any ill will toward the person injured or that he intend to cause or deliberately cause, the accident or injury in question. More precisely, it has been held that there is a distinction between the terms "willful" and "wanton," as used in such cases, in that "willful" implies intent or purpose, while "wanton" expresses a reckless disregard of consequences.' 60 C.J.S., Motor Vehicles, § 258, p. 631. See: *The Lafayette and Indianapolis Railroad Company* v. *Huffman* (1867), 28 Ind. 287; *The Terre Haute and*

*Indianapolis Railroad Company* v. *Graham* (1883), 95 Ind. 286.

The rule has been stated by our courts as follows:

" 'Wilful or wanton misconduct consists of the conscious and intentional doing of a wrongful act or ommission [sic] of a duty, with reckless indifference to consequences, under circumstances which show that the doer has knowledge of existing conditions and that injury will probably result.' *Becker* v. *Strater* (1947), 117 Ind. App. 504, 506, 72 N. E. 2d 580. See also: *Bedwell* v. *Debolt* (1943), 221 Ind. 600, 50 N. E. 2d 875.

"Appellant asserts that, inherent to the rule as above stated, there must be some 'perverse motive' on the part of the driver, such as malice or wilfulness, as related to the probability of injury to his guests, and that no such motive existed on the part of this appellant. We concur in the fact that to constitute 'willful or wanton misconduct' there must be a 'perverse motive,' in that the misconduct must be conscious and intentional and of such a nature that under the known existing conditions injury will probably result therefrom. However, as heretofore stated, this does not mean that the wrongful conduct of the driver must be motivated by malice, ill will, or intent to injure. Our statute uses the words 'wanton or wilful' in the disjunctive. Therefore, it is sufficient to meet the condition of the statute if the misconduct is *wanton*."

Very recently Division Two of this court treated the Indiana Guest Statute in a comprehensive opinion by Judge Sharp, in which he examined the pertinent authorities and cases with which we are here concerned. That decision, *Brueckner* v. *Jones* (1970), 146 Ind. App. 314, 255 N. E. 535, reversed a judgment by the trial court in favor of the guest plaintiff. That case, however, is clearly distinguishable from the factual situation here presented. The *Brueckner* decision distinguished *Clouse* v. *Peden, supra,* as follows at page 543,

"* * * *The guest in Clouse had asked the driver to slow down and reminded the driver of a prior accident at the same intersection. The guest continued to plead with the driver to slow down. The driver approached the intersection without applying his brakes.*"

and relied upon a factually similar case, *Tuttle* v. *Reid* (1966), 247 Ind. 375, 216 N. E. 2d 34. Judge Sharp noted that the guest statute test contemplates and requires establishment of a mental attitude on the part of the driver with respect to both his driving and his guest, which is adverse to the welfare of his guest. In the *Brueckner* case it was held that there was a total lack of evidence concerning the existence of such mental attitude.

We hold that there was sufficient evidence from which a jury might properly find such mental attitude to be here present. It is the evidence of warnings, repeatedly and by ▪ not one, but by *all* of defendant-appellee's passengers, which together with the sliding of the car would justify a jury's conclusion that the defendant was conscious of his misconduct. Such knowledge or consciousness may be obtained not only through the use of the driver's faculties but as well from information conveyed to him in the nature of warnings by others. *Bedwell* v. *DeBolt* (1943), 221 Ind. 600, 50 N. E. 2d 875. *Swinney* v. *Roler* (1943), 113 Ind. App. 367, 47 N. E. 2d 846. Both sources are here present.

With reference to the second essential element as set forth in the *Clouse* case, *supra,* the evidence adduced by plaintiff that defendant ignored the warnings of his passengers and cursorily dismissed them with a statement to the effect that everything was all right would permit reasonable men to conclude that defendant was knowingly asserting his interests above the safety of his passengers.

As to the third requisite element, the jury might reasonably have determined from the evidence in this case that appellee knew that his conduct subjected his guests to a probability of injury. Appellant need not prove that appellee had actual knowledge that injury would probably result from his wanton misconduct. Rather, if the circumstances are such that reasonable men would know and conclude that their conduct under such circumstances entailed a probability of

injury, then the driver of a motor vehicle is chargeable with this knowledge. *Sausaman* v. *Leininger, supra.*

Reasonable men could well find that operating an automobile at such a rate of speed that the automobile slides and skids around curves presents a probability of injury to the occupants of the automobile. The fact that the other five occupants of the vehicle were sufficiently alarmed at appellee's dangerous driving to make protest and warning in fear of the very sort of accident which did happen demonstrates that reasonable men would have apprehended the danger of injury. Appellee is chargeable with the same knowledge.

We hold that plaintiff-appellant made prima facie showing of the presence of the three requisite elements of wanton misconduct on the part of defendant and that as in *Clouse* v. *Peden, supra,* at page 398,

"* * *[u]nder the facts heretofore stated a jury may have, with reason, believed that appellee's misconduct was 'wanton' in that he consciously persisted therein in an undisciplined and sportive manner and with arrogant recklessness as to the rights and feelings of his guest who had entrusted himself to appellee's safe keeping".

Therefore, sustaining the defendant's motion for a directed verdict and giving a peremptory instruction at the conclusion of appellant's evidence that the jury return a verdict for the defendant was error.

The judgment of the trial court is hereby reversed and the cause is remanded with instructions to grant appellant's motion for new trial.

The costs hereof are assessed against appellee.

Lowdermilk, C.J., Carson and Cooper, JJ., concur.

NOTE.—Reported in 258 N. E. 2d 171.