ORVILLE FULLER *v.* LARRY K. WILES.

[No. 671 A 102. Filed March 21, 1972.]

418

Lewellyn H. Pratt, of Bloomington, for appellant.

Don M. Robertson, Bunger, Harrell & Robertson, of Bloomington, for appellee.

LYBROOK, J.—Plaintiff-appellant brought this action for personal injuries under the guest statute and appeals from the action of the trial court in directing a verdict for the defendant-appellee at the close of plaintiff's evidence on liability.

The complaint alleged that on August 12, 1968, plaintiff was riding as a non-paying guest of defendant in a 1964 Chevrolet automobile and that he sustained personal injuries as a result of the "wanton and [sic] willful misconduct" of the defendant which consisted of suddenly and violently accelerating said automobile, causing it to swerve and go out of control, striking a tree in the City of Bloomington.

Defendant in his answer joined the issue by admitting plaintiff's presence in the vehicle as a guest under the statute but denied the remainder of the complaint. This cause was submitted to a trial by jury and at the close of plaintiff's evidence on liability, defendant moved the court to instruct the jury to return a verdict for defendant. Said motion was granted and the jury duly returned the verdict as instructed and the Court then rendered judgment on the verdict against the plaintiff-appellant.

Plaintiff-appellant's Motion to Correct Errors was timely filed and overruled by the trial court and raised the single question as to whether the trial court erred in sustaining defendant's Motion for a Directed Verdict under the evidence and under the guest statute. The provisions of the statute cited as IC 1971, 9-3-3-1, Ind. Ann. Stat. § 47-1021 (Burns 1965) are as follows:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being

transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle."

The evidence in the record most favorable to the position of the plaintiff-appellant is: That on the day of the accident, the defendant-appellee, Larry K. Wiles, was 16 years of age and had just obtained his driver's license after completing a three month driver's education course. Later that same day Wiles picked up the plaintiff-appellant, Orville Fuller, at his home so that they might wash the car in preparation for a visit to the Fall Festival at Martinsville.

With Wiles at the wheel and Fuller in the right front seat as a non-paying passenger, the vehicle proceeded south on Oak Street in the City of Bloomington to a "T" intersection where Oak Street dead ends at Kirkwood Avenue. Wiles came to a complete stop in obedience to a stop sign, facing a concrete retaining wall which was 31 feet away, situated along the south side of Kirkwood Avenue. Plaintiff-appellant testified that he looked one way and Wiles looked the other:

"And just all of a sudden he just slammed the footfeed to the floor. I mean, it just set them tires on fire, I mean you know, just tearing and squealing and just started taking off. I thought we was going to hit the wall and it just kind of swerved to the left. And then it was going all which ways and you could still hear the tires and everything and just about, oh, just a little bit I looked up and looked over at Larry and he looked like he was terrified, you know, like he couldn't move and I looked down at the accelerator and you know, he still had his foot on it and we was going every bit of thirty-five or forty miles an hour and I looked up and seen the tree right in front of me. I didn't have a chance to grasp onto anything and so all at once I just went down, left hand first, and that was about it right there."

Plaintiff continued by saying again that Wiles, "just slammed the accelerator to the floor" and that the car was

fishtailing from side to side and headed right toward a tree east of the intersection and although the evidence was disputed as to the exact distance, plaintiff testified that it was approximately 150 feet. A police officer testified that the vehicle in question was a "total loss" after the collision.

Plaintiff also testified that the acceleration was violent by saying:

> "Well, I mean, he just tromped it. He turned the wheel so fast, you could just smell the rubber. Right down the road, you could see the tracks."

Plaintiff further testified that the incident occurred so quickly that he did not have time to give any warning to Wiles. After the car struck the tree he saw Wiles sitting up on a hill and heard him hollering "Why in the hell did I do it?" "Why the hell did I do it?"

Appellant in his brief cites the following recent Indiana cases discussing the elements necessary to make a case under the guest statute. They are: *Schwing* v. *McKibbin* (1970), 148 Ind. App. 222, 264 N. E. 2d 629; *Mazza* v. *Kelly* (1970), 147 Ind. App. 33, 258 N. E. 2d 171; *Brueckner* v. *Jones* (1970), 146 Ind. App. 314, 255 N. E. 2d 535; *Clouse* v. *Peden* (1962), 243 Ind. 390, 186 N. E. 2d 1.

The above cases, together with many other cases decided in recent years, provide us with the guidelines used by the courts in applying the guest statute to the facts in each case. The standard definition of willful or wanton misconduct was set forth in *Becker* v. *Strater* (1947), 117 Ind. App. 504, 72 N. E. 2d 580 as follows:

> "Willful or wanton misconduct consists of the conscious and intentional doing of a wrongful act or omission of a duty, with reckless indifference to consequences, under circumstances which show that the doer has knowledge of existing conditions and that injury will probably result."

The above definition was quoted in *Stillwell* v. *Adams* (1963), 135 Ind. App. 495, 193 N. E. 2d 74 and *Brown* v. *Saucerman* (1957), 237 Ind. 598, 145 N. E. 2d 898.

In a leading case, *Brown* v. *Saucerman, supra,* the Supreme Court of Indiana laid out the test to be applied to the facts in the following language:

"To be guilty of wanton misconduct within the meaning of the statute (§ 47-1201, *supra*), the driver must (1) be conscious of his misconduct; (2) be motivated by a ■ desire to assert himself or his interests above or beyond, or in reckless indifference for, the safety of his guests, and (3) he must do so knowing that his conduct subjects them to a high probability of injury."

In the recent case of *Brueckner* v. *Jones* (1970), 146 Ind. App. 314, 255 N. E. 2d 535, this court said:

"Since 1937 the Indiana Supreme and Appellate Courts have laid down certain guidelines for the lower ■ courts to follow in evaluating guest cases. An examination of these authorities indicates:

a. An error of judgment or a mistake standing alone, on the part of the host, will not amount to wanton or wilful misconduct.

b. The host must have manifested an attitude adverse to the guest, or of 'perverseness,' in that the host must have shown he was indifferent to the consequences of his conduct.

c. The entire course of conduct of the host leading up to the accident must be considered.

d. The host must have had actual knowledge of danger confronting the guest."

Further discussion of the necessity of the presence of a "perverse motive" is contained in another recent decision, *Mazza* v. *Kelly* (1970), 147 Ind. 33, 258 N. E. 2d 171, wherein the court said:

"We concur in the fact that to constitute 'willful or wanton misconduct' there must be a 'perverse motive,' in that the

misconduct must be conscious and intentional and of such a nature that under the known existing conditions injury will probably result therefrom. However, as heretofore stated, this does not mean that the wrongful conduct of the driver must be motivated by malice, ill will, or intent to injure. Our statute uses the words 'wanton or wilful' in the disjunctive. Therefore, it is sufficient to meet the condition of the statute if the misconduct is wanton."

In a very recent decision under the guest act Judge Lowdermilk of this court exhaustively reviewed and discussed the guest cases of this state in *Cheek, admx.* v. *Hamlin, admr.* (1972), 150 Ind. App. 681, 277 N. E. 2d 620, 29 Ind. Dec. 16.

In judging the conduct of the appellee herein we are bound to apply the same standard to him as we would to an adult even though he was but 16 years of age and had just obtained his driver's license earlier on the day of the accident. As was said in *Sausaman* v. *Leininger* (1957), 237 Ind. 508, 146 N. E. 2d 414:

"The fact that appellant was a youth and that wanton impulses may be natural to young people does not excuse appellant of his misconduct. Neither does his immaturity excuse his failure to contemplate the consequences of his act. There is nothing in the statute which indicates a legislative intent that we should place one construction on the statute as applied to young people and another to adults. Therefore, in determining whether the driver of a motor vehicle had knowledge that injury would probably result from his wanton misconduct, responsibility for such knowledge must be measured by the standard with which reasonable men of ordinary intelligence are chargeable under the circumstances. Under our statute no person, young or old, can operate an automobile on the public highway in a manner controlled by wanton impulse or motive, under conditions known likely to produce injury, without being legally responsible to his guests for injuries caused thereby."

In applying the above law to the facts in this case we are bound to consider the evidence most favorable to the appellant

and as was said in *Tuttle* v. *Reid* (1966), 247 Ind. 375, 216 N. E. 2d 34:

". . . directing a verdict favorable to [defendant-appellee Reid] was proper only if all the evidence favorable to appellant *and all the inferences which reasonably might have been drawn therefrom* were not sufficient to establish wilful or wanton misconduct on the part of appellee Reid." (Our emphasis.)

It is well established that the question as to whether the accident was caused by the willful or wanton misconduct of the defendant should be left to the jury in all cases where there is any conflict in the evidence or where different inferences from the testimony given might be reasonably drawn. *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N. E. 2d 836. Also, in *Clouse* v. *Peden* (1962), 243 Ind. 390, 186 N. E. 2d 1 the Court quoted *Brown* v. *Saucerman, supra,* saying:

"The question as to whether the accident was caused by the wanton or wilful misconduct of the defendant should be left to the jury in all cases where there is any conflict in the evidence or where different inferences from the testimony given [regarding the essential facts] might be reasonably drawn. . . ."

In this case it would appear from the evidence that it could be reasonably inferred that the appellee, Wiles, was conscious of his conduct and that a jury could have inferred that he had a perverse attitude toward the safety of his guest. If he had merely accelerated his car in rounding the corner at too great a speed it could perhaps be successfully argued that he was merely negligent and that the collision occurred because of an error in judgment. However, in this case he did not merely over accelerate. From a complete stop and facing a concrete retaining wall 31 feet away he, "slammed the footfeed to the floor". Under the circumstances it could be reasonably inferred that he intended to suddenly accelerate the vehicle as fast as it could possibly be done and that this wanton attitude,

under the surrounding physical circumstances, caused the plaintiff's injuries.

In a recent opinion of this Court Judge Buchanan ably discusses the method of considering the evidence where there has been a motion for a directed verdict. In *Mamula* v. *Ford Motor Company* (1971), 150 Ind. App. 179, 275 N. E. 2d 849 he stated that:

> "The quantum of evidence necessary for a plaintiff to avoid a directed verdict at the close of his evidence has been determined by our Supreme Court to be *any* evidence or legitimate inference therefrom tending to sup- support at least one of the plaintiff's allegations. Specifically, our Supreme Court held in *Hendrix* v. *Harbelis* (1967), 248 Ind. 619, 623, 230 N. E. 2d 315, 318, that:

> 'It is only where there is a *total absence* of evidence or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the defendant, that the court may give a peremptory instruction. . . .' (Emphasis supplied.)

> \* \* \*

> "When passing on a motion for a directed verdict, the court is merely called on to determine if there is *some* evidence of negligence on the part of the defendant which the jury is entitled to consider. *Jones* v. *Furlong* (1951), 121 Ind. App. 279, 97 N. E. 2d 369. *Where the evidence is such that the minds of reasonable men might differ*, or if the determination of negligence depends on conflicting evidence, then the question is for the jury. [Citing cases.]"

Judge Buchanan concluded:

> "Therefore, a directed verdict is proper only when the evidence is without conflict and is susceptible of but one inference in favor of the moving party. [citing cases.]"

We are of the opinion in this case that reasonable men might draw different inferences from the evidence and that one of the inferences could have been that the defendant-appellee was guilty of wanton or willful misconduct.

We further necessarily reach the conclusion that the trial court was in error in sustaining appellee's Motion for Directed Verdict and that same was contrary to law.

Therefore, this cause is reversed and remanded to the trial court with the direction that appellant be granted a new trial.

Robertson, P.J., Lowdermilk, J., concur.

NOTE.—Reported in 280 N. E. 2d 59.