Pamela SILI, Appellant-Plaintiff,

v.

David R. VINNEDGE, Appellee-Defendant.

No. 3–978A215.

Court of Appeals of Indiana, Fourth District.

Aug. 28, 1979.

John H. Gautier, David V. Bent, Bingham, Loughlin, Means & Mick, Mishawaka, for appellant-plaintiff.

John J. Lorber, May, Searer, Oberfell & Helling, South Bend, for appellee-defendant.

CHIPMAN, Judge.

Appellant Pamela Sili sued David Vinnedge for personal injuries she received while she was a guest passenger in an automobile driven by Vinnedge in Mishawaka, Indiana.[1] At the close of the evidence the court directed a Judgment on the Evidence based on a Motion by the defendant under Ind. Rules of Procedure, Trial Rule 50(A). Appellant appeals, challenging the court's ruling as contrary to law and asserting the court improperly weighed the evidence in reaching its decision.

We agree with appellant and reverse.

## FACTS

On September 20, 1971, appellant obtained a ride home from school with Vinnedge. Also in the car were Carol King and Greg Kirk. Appellant sat in the back seat and King and Kirk sat in the front with Vinnedge. The car was a Gremlin X, with a three speed stick shift and wide tires.

The route Vinnedge would take from the high school was north on Willow Street to a four-way stop at the intersection of Willow and Battel. A right turn would be taken onto Battel which, after a curve, became Merrifield Street. Vinnedge testified he had driven the route twenty-five to thirty times.

Appellant remembers very little of the trip. Carol King turned around and spoke to her. Appellant does not recall anyone complaining to Vinnedge about his driving, nor does she recall any thing unusual about Vinnedge's conduct. She does remember saying "look out" at some point in time, but cannot recall exactly when.

Janetta Kelly picked up her son at the high school that afternoon. Her car was in line directly behind Vinnedge's and one Jeff White's car, with Vinnedge being the first in line. She observed both cars leave the parking lot "going very fast," and said she heard Vinnedge spin his wheels as he left the lot. She also smelled burning rubber and saw black tire marks on the pavement. As Vinnedge pulled out of the lot, he almost collided with another car and "nearly lost control of his car." Ms. Kelly's route home was the same as Vinnedge's but she lost sight of his car presumably because of the difference in speed. She estimated the elapsed time from the high school to the scene of the accident to be one and a half to two minutes.

Paul Fjerstad was a passenger in the car that followed Vinnedge from the high school. (This was presumably Jeff White's car, but Fjerstad did not recall the driver.) He remembers that Vinnedge made a "normal" right hand turn onto Battel. Fjerstad apparently watched Vinnedge's car while it went through the curve as he testified the car hit the right curb, bounced off, and then he thought Vinnedge regained control, but "all of a sudden" the car turned sharply left into a tree. He did not see the car skid before it hit the curb. He estimated Vinnedge's speed entering the curve to be 45–50 miles per hour and he did not see any brake lights. Fjerstad thought the car slowed down slightly after it hit the curb. Without objection, Fjerstad said he thought excessive speed caused Vinnedge to hit the curb.

After impact, Ms. Kelly and the occupants of Jeff White's car attempted to give assistance to the injured persons in Vinnedge's car. Officer Schwartz arrived shortly thereafter.

Schwartz said the weather on September 20, 1971, was sunny and dry and the road surface was good. He observed four and a half to five feet of skid marks directly behind the car. He also noticed approxi-

---

1. Suit was brought under Ind. Code 9–3–3–1.

mately three hundred feet of "scuff marks." These marks are made by a rolling tire on which the brakes are not locked up. The scuff marks on the road were made by the outside edge of Vinnedge's right front and possibly right rear tire. The scuff marks were continuous for the entire three hundred feet.

Raymond Brach, a professor at Notre Dame with a Ph.D. in Mechanical Engineering, testified at the trial. He prefaced his expert testimony by stating his calculations were not, and could not be precise; they were only estimates. By way of technical calculations he judged Vinnedge's speed to be approximately 30–40 miles per hour through the curve. He described "breakout speed" to be that speed at which a car, going through a curve, would begin to slide or skid. Breakout speed for this particular curve was calculated to be 32–40 miles per hour. He stated a car will not make scuff marks unless it is at or near the breakout speed. Continuous scuff marks indicate the constant speed throughout the length of the marks.

Dr. Brach also estimated the speed at impact to be 15–20 miles per hour. This figure was reached by estimating the number of inches the tree penetrated the car upon impact, with one inch roughly equalling one mile per hour. Skid marks of five feet would indicate, in Brach's opinion, that the car slowed by 15 to 20 miles per hour just prior to impact.

### ISSUES

Two issues are presented for our review:

1. Whether the court erred as a matter of law when it granted Vinnedge's Motion for Judgment on the Evidence at the close of plaintiff's case?

2. Did the court improperly weigh the evidence in granting appellee's Judgment on the Evidence?

### I. JUDGMENT ON THE EVIDENCE

■ This case is controlled by the Indiana Guest Statute, Ind. Code 9–3–3–1.[2] To be liable under the statute, the host-driver must be guilty of "wanton or wilful misconduct."

■ We will affirm the trial court's granting of the Motion for Judgment on the Evidence only if the evidence and all reasonable inferences would require a reasonable man, as a matter of law, to conclude that Vinnedge's conduct did not constitute wanton or wilful misconduct. *Andert v. Fuchs*, (1978) Ind.App., 381 N.E.2d 1081, [hereinafter cited as *Andert*]; *McKeown v. Calusa*, (1977) Ind.App., 359 N.E.2d 550. In other words, there must have been a lack of evidence and reasonable inferences to support a finding of wanton or wilful misconduct before the trial court. *Andert; see Huff v. Travelers Indemnity Company*, (1977) 266 Ind. 414, 363 N.E.2d 985. We think the evidence presented by appellant raised at least a reasonable inference of Vinnedge's wanton misconduct. It was therefore reversible error for the court to have granted Vinnedge's Motion for Judgment on the Evidence. *Cheek v. Hamlin*, (1972) 150 Ind.App. 681, 277 N.E.2d 620.

■ Our courts have held in order to be guilty of wanton misconduct a host-driver must: (1) be conscious of his misconduct; (2) be motivated by a reckless indifference for the safety of his guest, and (3) he must do so knowing his conduct subjects his guest to a probability of injury. *Clouse v. Peden*, (1962) 243 Ind. 390, 186 N.E.2d 1; *Brown v. Saucerman*, (1957) 237 Ind. 598, 145 N.E.2d 898; *Andert; Fielitz v. Allred*, (1977) Ind.App., 364 N.E.2d 786, [hereinafter cited as *Fielitz*]. We think a jury could have found the evidence fulfilled all three criteria.

2. 9–3–3–1 [47–1021]. Guest of owner or operator—Right to damages.—The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle.

1. At least two facts show Vinnedge may have been conscious of his misconduct. First, the car slid through the turn for approximately three hundred feet. This could indicate Vinnedge took the curve too quickly and yet persisted in holding his speed constant. Second, Vinnedge testified he had driven the same route twenty-five to thirty times. He was, therefore, familiar with the curve and perhaps knew what speed was safe and what speed was unsafe. The jury might have found these facts constituted a consciousness of misconduct.

2. "Reckless indifference" is the mental element. This is commonly shown by the host-driver's disregard of his passenger's complaints or warnings about his driving. *E. g., Tutterrow v. Brookshire*, (1972) 152 Ind.App. 471, 284 N.E.2d 87. However, the mental state of indifference may be inferred. *E. g., Eikenberry v. Neher*, (1956) 126 Ind.App. 571, 134 N.E.2d 710. The evidence of the scuff marks shows Vinnedge may have initially taken the curve too fast, but instead of decreasing his speed, held it constant until just before impact with the tree. From this a jury might infer that Vinnedge's only thought was to take the curve at the fastest speed possible, thus possibly constituting "reckless indifference."

3. This is the knowledge element; the host-driver must know his actions subject his guest to a probability of injury. Direct evidence of this element is obviously unlikely. It, therefore, most often will be inferred from the testimony. *See Fielitz*, 364 N.E.2d 786, 788–89. The jury could have found Vinnedge knew his conduct subjected his guest to a probability of injury in light of his familiarity with the curve and his possibly excessive speed as shown by the scuff marks.

In addition to the three criteria discussed above, our courts have pronounced "guidelines" for evaluating guest statute cases. They are as follows:

A. An error in judgment or mistake, standing alone, on the part of the host, will not amount to wanton or wilful misconduct.

B. The host must have manifested an attitude adverse to the guest or of "perverseness" in that the host must have shown he was indifferent to the consequences of his conduct.

C. The entire course of conduct of the host leading up to the accident must be considered.

D. The host must have knowledge of the danger confronting his guest. If circumstances are such that reasonable men would know and conclude their conduct under such circumstances entailed a probability of injury, then the host is chargeable with such knowledge.

*Fielitz; Andert; Tutterrow v. Brookshire, supra; Mazza v. Kelly*, (1970) 147 Ind.App. 33, 258 N.E.2d 171; *Brueckner v. Jones*, (1970) 146 Ind.App. 314, 255 N.E.2d 535.

Applying the facts to these guidelines:

A. It may have been an error in judgment for Vinnedge to take the curve too quickly. However, a jury could find any initial excessive speed ceased to be a mistake when Vinnedge held his speed constant throughout the curve.

B. This is essentially the same as the indifference element discussed above, under element number two.

C. Vinnedge's course of conduct includes the entire one and a half to two minute trip. Thus, his conduct leaving the high school—spinning tires, narrowly avoiding a collision, and "going very fast"—must be considered. Also to be considered under this guideline, however, are Vinnedge's "normal" turn at the four-way stop and the fact appellant did not recall anything unusual about the trip and no one complained about Vinnedge's driving.

D. This is essentially the same as the knowledge element discussed above, under element number three.

The purpose of our analysis is not to persuade the trial court to enter judgment for appellant. Further, we express no opinion as to what we believe the jury's decision should be. We merely point out the evidence and inferences presented by appellant

*could* support a judgment for appellant. Therefore, the case should have been left for the jury's resolution, and we find the trial court's granting of Vinnedge's Motion for Judgment on the Evidence to be reversible error.

## II. WEIGHING OF THE EVIDENCE

■ In her second asserted error, appellant argues the court improperly weighed the evidence in arriving at its decision to grant the judgment on the evidence. Appellant correctly states the law when she says the trial court may not weigh the evidence, but must view the evidence and inferences therefrom most favorably to the plaintiff. However, in light of our decision in the first part of this opinion, we find it unnecessary to address this issue.

Reversed and remanded.

MILLER, P. J., and YOUNG, J., concur.