Patricia GIBSON, Plaintiff–Appellant,

v.

The ESTATE of Paul E. HOLDERBAUM
and Florence Holderbaum,
Defendants–Appellees.

No. 3–779A209.

Court of Appeals of Indiana,
Third District.

Dec. 8, 1980.

Robert F. Gonderman, Gonderman Law Office, South Bend, for plaintiff–appellant.

William J. Reinke, Thornburg, McGill, Deahl, Harman, Carey & Murray, South Bend, for defendants–appellees.

HOFFMAN, Judge.

This appeal contests a judgment on the evidence which was granted in favor of the defendant at the close of the plaintiff's case in an action for personal injuries. The plaintiff was a guest in a car driven by Paul Holderbaum and, thus, this case is governed by the Indiana Guest Statute found at IC 1971, 9–3–3–1 et seq. (Burns 1980 Repl.). The case proceeded on a theory of wanton misconduct by the driver which caused the plaintiff's injuries.

To properly grant a judgment on the evidence, the trial court must find that the evidence and all reasonable inferences to be drawn therefrom would require a reasonable man to conclude, as a matter of law, that the defendant's actions did not constitute wanton misconduct. If the evidence presented by the plaintiff raises, at least, a reasonable inference of wanton misconduct, then it was reversible error for the court to grant the judgment on the evidence. *Sili v. Vinnedge* (1979), Ind.App., 393 N.E.2d 251.

A review of the many cases decided under the Indiana Guest Statute indicates that the detailed factual descriptions of the accident are of critical importance. In the present case, the relevant facts occurred at approximately 8:00 P.M. on November 15, 1966. Patricia Gibson, then fifteen years old, and Paul Holderbaum, sixteen years old, were at the home of a friend, Connie Boran, playing records and enjoying themselves. Three other friends were also present. While they were at the Boran home, the plaintiff, Holderbaum and two others decided they no longer wanted to be with the remaining two friends. They decided to have Mrs. Boran ask them all to leave. After the unwanted friends had left,

the plaintiff, Holderbaum and the two other friends planned to return to the Boran home and continue their party. The four who were to return left in Holderbaum's automobile. The unwanted couple left in a second vehicle. The cars proceeded in opposite directions on State Highway 23 in St. Joseph County with Holderbaum going in a northeasterly direction. After passing the intersection with Redwood Road, he continued another two tenths of a mile down the road where he pulled into Kline Trail and turned around. He quickly accelerated to a speed which was later estimated by the state police to be approximately 65 miles an hour. Shortly before again reaching the intersection of Highway 23 and Redwood Road, the passengers in the Holderbaum vehicle noticed the second vehicle, belonging to their unwanted friends, driving toward them on the opposite side of the road.

Suddenly, without any warning to his passengers, Holderbaum attempted to make a left turn from Highway 23 onto Redwood Road. He lost control of the car, went off the road, hit a utility pole and the car rolled over on its top. Paul Holderbaum died as a result of the injuries he received and the plaintiff sustained deep facial lacerations when she was thrown through the windshield. The car traveled approximately 215 feet from the point where Holderbaum first applied his brakes to its final resting position in the field. Sixty–six feet of heavy skid marks and eighty–five feet of broken skid marks were left on the roadway. These facts were presented by the plaintiff at trial.

■ The test for determining liability under the Guest Statute has been clearly established in Indiana. To be guilty of wanton misconduct, the driver must (1) be conscious of his misconduct; (2) be motivated by a desire to assert himself or his interests above and beyond, or in reckless indifference for, the safety of his guest; and, (3) he must do so knowing that his conduct subjects them to a probability of injury. *Brown v. Saucerman* (1957), 237 Ind. 598, 145 N.E.2d 898. In addition to these elements, the court in *Brueckner v. Jones*

(1970), 146 Ind.App. 314, 255 N.E.2d 535 set forth four factors to be considered in the evaluation of a guest case.

"a. An error of judgment or a mistake standing alone, on the part of the host, will not amount to wanton or wilful misconduct.

"b. The host must have manifested an attitude adverse to the guest, or of 'perverseness,' in that the host must have shown he was indifferent to the consequences of his conduct.

"c. The entire course of conduct of the host leading up to the accident must be considered.

"d. The host must have had actual knowledge of danger confronting the guest."

255 N.E.2d at 543.

In rendering the judgment on the evidence, the trial court specifically found that the evidence failed to support a finding of guideline (b) above. After examining the evidence in the light most favorable to the plaintiff, judgment was rendered for the defendant because the court could not find any evidence of "perverseness of attitude." The only element in question on this appeal is guideline (b).

■ The mental attitude of the host driver is the critical element of a guest case. As stated by the Indiana Supreme Court in *Andert v. Fuchs* (1979), Ind., at 394 N.E.2d 931, at 934:

"The gravamen of an actionable guest act case, that distinguishes it from actions not under its purview, is the mental attitude of the host driver, when the misconduct occurs. Such attitude with respect to both his driving and his guest must have been one adverse to the welfare of the guest.

\* \* \* \* \* \*

"Under the foregoing cited cases, it was incumbent upon the plaintiff to produce substantial evidence of probative value that the defendant consciously and intentionally, with a perverse motive, or reckless indifference as to the consequences, operated his vehicle improperly under

known existing conditions." (Citations omitted).

The analysis of the driver's conduct to determine liability was further elaborated in *Clouse, etc. v. Peden* (1962), 243 Ind. 390, at 397–398, 186 N.E.2d 1, at 4:

"Was appellee's misconduct merely an unthinking or irresponsible act and, therefore, mere negligence or recklessness, or was his conduct consciously performed with a mental attitude which would characterize it as wanton? As noted in *Brown v. Saucerman, supra*, at page 618, 145 N.E.2d at page 906, Webster's New International Dictionary 3rd Ed. defines *wanton* as follows: ' "\* \* \* undisciplined; not susceptible to control; \* \* \*. Excessively merry or gay; sportive; frolicsome; \* \* \* marked by or manifesting arrogant recklessness of justice, or the rights or feelings of others, \* \* \*." ' Under the facts heretofore stated a jury may have, with reason, believed that appellee's misconduct was 'wanton' in that he consciously persisted therein in an undisciplined and sportive manner and with arrogant recklessness as to the rights and feelings of his guest who had entrusted himself to appellee's safe keeping." (Original emphasis).

Therefore, an adverse attitude need not be hostile or consciously abusive. An undisciplined and sportive manner coupled with arrogant recklessness will satisfy the statutory requirement of wanton misconduct if, under the known existing circumstances, injury will probably result therefrom. It is not necessary to show that the driver is motivated by malice, ill will, or a specific intent to injure. *Mazza v. Kelly* (1970), 147 Ind.App. 33, 258 N.E.2d 171.

■ A case which is similar in many respects to the case at bar is *Fuller v. Wiles* (1972), 151 Ind.App. 417, 280 N.E.2d 59, which involved a sixteen–year–old driver who had just obtained his driver's license. The young man picked up a friend and was going to get the car washed. When approaching a T–intersection, the driver came to a complete stop, facing a concrete retaining wall. Until that time, he had been

driving in an apparently reasonable and safe manner. Suddenly, with no warning to his passenger, he "slammed the footfeed to the floor," lost control of the car, crashed into a tree and, as a result, his passenger was injured. The Court of Appeals determined that it was error for the trial court to direct a verdict for the defendant at the close of the plaintiff's evidence. The question should properly have gone to the jury.

The similarity between the *Fuller* case and the case at bar exists in that both drivers were sixteen years old, with limited driving experience. Both were proceeding in a reasonably safe manner when a conscious but impulsive decision was made which resulted in injuries to the passengers. In both cases, the jury could reasonably infer that the impulsive decision was made with reckless indifference for the safety of the passengers. Also, both drivers knew or should have known that their conduct subjected the passengers to a probability of injury. In discussing the standard to be applied to a young driver, the court in *Fuller, supra,* stated,

> "In judging the conduct of the appellee herein we are bound to apply the same standard to him as we would to an adult even though he was but 16 years of age and had just obtained his driver's license earlier on the day of the accident. As was said in *Sausaman v. Leininger* (1957), 237 Ind. 508, 146 N.E.2d 414:
>
> > 'The fact that appellant was a youth and that wanton impulses may be natural to young people does not excuse appellant of his misconduct. Neither does his immaturity excuse his failure to contemplate the consequences of his act. There is nothing in the statute which indicates a legislative intent that we should place one construction on the statute as applied to young people and another to adults. Therefore, in determining whether the driver of a motor vehicle had knowledge that injury would probably result from his wanton misconduct, responsibility for such knowledge must be measured by the standard with which reasonable men of ordinary intelligence are chargeable

under the circumstances. Under our statute no person, young or old, can operate an automobile on the public highway, in a manner controlled by wanton impulse or motive, under conditions known likely to produce injury, without being legally responsible to his guests for injuries caused thereby.' "

280 N.E.2d at 62.

In this case, the driver must bear the legal responsibility for his conscious, impulsive decision to turn left while proceeding at a high rate of speed. See, *Sili v. Vinnedge, supra,* for another somewhat similar fact situation. The jury could infer that the defendant acted with reckless indifference for the safety of his passengers by engaging in a motorized game of hide-and-seek.

Therefore, the judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

STATON, J., concurs.

GARRARD, P. J., concurs with opinion.

GARRARD, Presiding Judge, concurring.

The decisions of our Supreme Court have held that the "perverseness of attitude" necessary to recover in a guest passenger case can be established by evidence of the voluntary commission of the act coupled with an awareness on the part of the actor that injury to the passenger will probably result. *See, e. g., Brown v. Saucerman* (1957), 237 Ind. 598, 145 N.E.2d 898.

The court recently addressed this qualitative question in *Andert v. Fuchs* (1979), Ind., 394 N.E.2d 931, 934. It quoted with approval from *Clouse v. Peden* (1962), 243 Ind. 390, 186 N.E.2d 1, setting forth an objective standard of

> "... a very real and present likelihood of injury under circumstances where the misconduct of the operator of the vehicle would be the proximate cause of the injury."

*See also Frybarger v. Coffelt* (1979), Ind. App., 387 N.E.2d 104, 106.

It appears to me that what we hold today is that Holderbaum's action in attempting a nearly right angle left hand turn while driving at a rate of speed near sixty–five miles per hour is so fraught with peril that the perverse attitude–likelihood of injury element may be reasonably inferred from the act alone. As such it may be distinguished from situations involving speeding (*Frybarger*) or intoxication (*Andert*) where the evidence was such that the inference sought was possible, but without more a verdict to that effect would need be based on speculation and could not stand. On the basis of that distinction, I concur.