Keith **MITCHELL** by Natural Father Ralph **MITCHELL** and Ralph Mitchell, Plaintiffs-Alpellants,

v.

Curtis **TURNER**, Roger Turner and Jane Turner, Defendants-Appellees.

No. 3884A231.

Court of Appeals of Indiana, Third District.

Nov. 4, 1985.

Saul I. Ruman, Thomas J. Herr, Glenn D. Commons, Saul I. Ruman & Associates, Hammond, for plaintiffs-appellants.

David J. Hanson, Robin D. Pierce, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for defendants-appellees.

GARRARD, Judge.

This action was brought under the Indiana Guest Statute[1] to recover damages for injuries sustained in a collision occurring in Hammond, Indiana. On May 16, 1980, 15 year old Keith Mitchell was a passenger in a car driven by 16 year old Curtis Turner, an acquaintance of Keith's. While Curtis was attempting to negotiate a left hand turn at the intersection of 171st Street and Calumet Avenue in Hammond, his car was struck on the passenger side by a semi-tractor-trailer driven by Larry Dalton. Keith Mitchell suffered severe injuries leaving him a quadriplegic.

Keith Mitchell and his father, Ralph Mitchell (Mitchells) initiated this lawsuit against Curtis Turner and his parents (Turners), alleging that Keith's injuries were proximately caused by the wilful or wanton misconduct of Curtis Turner. There was conflicting testimony presented to the jury as to the speed of Dalton's tractor-trailer and Curtis Turner's car, the distance the tractor-trailer was from the intersection when Curtis Turner attempted to complete the turn in front of it, and the status of the traffic signal regulating the intersection. Keith Mitchell has no memory of the accident. The jury returned a verdict for the Turners.

The Mitchells and Turners both tendered instructions for the jury. The Mitchells' appeal alleges that the trial court committed, in essence, six separate errors regarding either instructions the Mitchells tendered which were rejected or instructions the trial court ultimately used to charge the jury. Before addressing the Mitchells' various contentions it is important to keep in mind the following general rules regarding our review of jury instructions:

(1) Nonmandatory instructions that are given in a case must be considered as a whole and with reference to each other to determine whether the jury was properly instructed. *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73; *F.W. Woolworth Co., Inc. v. Anderson* (1984), Ind.App., 471 N.E.2d 1249; *Drolet, Admtrx. etc. v. Pennsylvania R. Co.* (1960), 130 Ind.App. 549, 164 N.E.2d 555.

(2) "If the instructions considered as a whole fully and fairly instruct the jury, error in any particular instruction will not justify a reversal unless it is such as to vitiate the whole charge to the jury. The charge is vitiated only when the instruction is so erroneous that it must be concluded the jurors have been misled as to the law of the case." *Spratt v. Alsup* (1984), Ind.App., 468 N.E.2d 1059; *Wyler v. Lilly Varnish Co.* (1969), 146 Ind.App. 91, 252 N.E.2d 824; *Drolet, Admtrx. etc., supra.*

---

1. This action arose on May 16, 1980, prior to the 1984 amendment of the Guest Statute, IC 9–3–3– 1, limiting the coverage of the statute to certain specified "guests."

## I.

The Mitchells contend that the trial court erred in giving instruction number 18 which reads:

"The mental attitude of the defendant toward the driving of the motor vehicle and toward the plaintiff is an issue in this case. The law requires the plaintiff to prove by a fair preponderance of evidence that the defendant Curtis Turner had an adverse attitude toward his driving and toward the plaintiff."

The Mitchells contend this instruction is erroneous because it incorrectly states the law by placing upon them the burden of proving that Curtis Turner had an adverse attitude.[2] The Mitchells further argue that the instruction constitutes reversible error because it conflicts with the trial court's instruction number 20,[3] which provides that wanton conduct need not be hostile.

Three elements have been consistently required to establish a case of wanton misconduct under the Indiana Guest Statute. These elements were enumerated by Judge Achor in a concurrence to *Brown v. Saucerman* (1957), 237 Ind. 598, 145 N.E.2d 898 at 907:

"To be guilty of *wanton* misconduct within the meaning of the statute (Sec. 47–1021, *supra*), the driver must (1) be conscious of his misconduct; (2) be motivated by a desire to assert himself or his interests above or beyond, or in reckless indifference for, the safety of his guest, and (3) he must do so knowing that his conduct subjects them to a ... probability of injury."

*See also Andis v. Newlin* (1982), Ind., 442 N.E.2d 1106; *Clouse, etc. v. Peden* (1962), 243 Ind. 390, 186 N.E.2d 1. Additionally,

four factors have been established by the Indiana courts as guidelines in the evaluation of a Guest Statute case. These factors are:

"a. An error of judgment or a mistake standing alone, on the part of the host, will not amount to wanton or wilful misconduct.

b. The host must have manifested an attitude adverse to the guest, or of 'perverseness,' in that the host must have shown he was indifferent to the consequences of his conduct.

c. The entire course of conduct of the host leading up to the accident must be considered.

d. The host must have had actual knowledge of danger confronting the guest."

*Thrapp v. Austin* (1982), Ind.App., 436 N.E.2d 1170; *Hershberger v. Brooker* (1981), Ind.App., 421 N.E.2d 672; *Stauffer v. Lothamer* (1981), Ind.App., 419 N.E.2d 203; *Gibson v. Estate of Holderbaum* (1980), Ind.App., 413 N.E.2d 614; *Brueckner v. Jones* (1970), 146 Ind.App. 314, 255 N.E.2d 535, 543.

The critical element in a guest case is the mental attitude of the host driver. *Gibson v. Estate of Holderbaum, supra.* In *Gibson*, Judge Hoffman carefully analyzed the Supreme Court cases on the subject, concluding that:

"The mental attitude of the host driver is the critical element of a guest case. As stated by the Indiana Supreme Court in *Andert v. Fuchs* (1979), [271] Ind. [627] at 394 N.E.2d 931, ... 934.

'The gravamen of an actionable guest act case, that distinguishes it

---

**2.** In support of their objection the Mitchells cited three cases, including: *Stauffer v. Lothamer* (1981), Ind.App., 419 N.E.2d 203; *Gibson v. Estate of Holderbaum* (1980), Ind.App., 413 N.E.2d 614; *Mazza v. Kelly* (1970), 147 Ind.App. 33, 258 N.E.2d 171.

**3.** The full text of instruction number 20 is as follows:

"A driver's conduct is 'wanton' if he consciously persists in an undisciplined and sportive manner and with arrogant recklessness as

to the rights and feelings of his guest who had entrusted himself to the driver's safe keeping.

Therefore, 'wanton' conduct need not be hostile or conspicuously abusive or intentionally injurious. An undisciplined and sportive manner coupled with an arrogant recklessness will satisfy the statutory requirement of wanton misconduct if, under the known existing circumstances, injury will probably result therefrom. It is not necessary to show that the driver is motivated by malice, ill will or a specific intent to injure."

from actions not under its purview, is the mental attitude of the host driver, when the misconduct occurs. Such attitude with respect to both his driving and his guest must have been one adverse to the welfare of the guest.

\*　\*　\*　\*　\*　\*

Under the foregoing cited cases, it was incumbent upon the plaintiff to produce substantial evidence of probative value that the defendant consciously and intentionally, with a perverse motive, or reckless indifference as to the consequences, operated his vehicle improperly under known existing conditions.' (Citations omitted).

The analysis of the driver's conduct to determine liability was further elaborated in *Clouse, etc. v. Peden* (1962), 243 Ind. 390, at 397–398, 186 N.E.2d 1, at 4:

'Was appellee's misconduct merely an unthinking or irresponsible act and, therefore, mere negligence or recklessness, or was his conduct consciously performed with a mental attitude which would characterize it as wanton? As noted in *Brown v. Saucerman, supra,* [237 Ind.] at page 618, 145 N.E.2d at page 906, Webster's New International Dictionary 3rd Ed. defines wanton as follows: '... undisciplined; not susceptible to control; ... Excessively merry or gay; sportive; frolicsome; ... marked by or manifesting arrogant recklessness of justice, or the rights or feelings of others,....' Under the facts heretofore stated a jury may have, with reason, believed that appellee's misconduct was 'wanton' in that he consciously persisted therein in an undisciplined and sportive manner and with arrogant recklessness as to the rights and feelings of his guest who had entrusted himself to appellee's safe keeping.'

Therefore, an adverse attitude need not be hostile or consciously abusive. An undisciplined and sportive manner coupled with arrogant recklessness will satisfy the statutory requirement of wanton misconduct if, under the known existing circumstances, injury will probably result therefrom. It is not necessary to show that the driver is motivated by malice, ill will, or a specific intent to injure. *Mazza v. Kelly* (1970), 147 Ind.App. 33, 258 N.E.2d 171."

413 N.E.2d at 616.

■ From the foregoing it is apparent that the adverse attitude or perverseness language has long been applied in cases brought under the Guest Statute in an effort to better define the mental element involved. *See Sili v. Vinnedge* (1979), 181 Ind.App. 658, 393 N.E.2d 251, 255 (indicating that the adverse attitude or perverseness guideline is essentially the same as the mental element of reckless indifference required under the Guest Statute). *See also Clouse v. Peden, supra; Sausaman v. Leininger* (1957), 237 Ind. 508, 146 N.E.2d 414; *Brueckner v. Jones, supra.* Furthermore, the *Gibson* case clearly indicates that an adverse attitude need not be "hostile." There is then no conflict between the trial court's instructing as to adverse attitude on the one hand and indicating in instruction number 20 that wanton conduct need not be hostile.

■ The Mitchells attempt to bolster their argument against the adverse attitude instruction with two recent Indiana Supreme Court cases which they contend implicitly did away with the adverse attitude requirement by not discussing it as a necessary element in a guest case.[4] After reviewing these cases, we conclude that this argument is without merit. The *Martin v. Roberts,* and *Andis v. Newlin* decisions, *supra,* n. 3, do not address the adverse attitude or perverseness requirement

---

**4.** The two cases cited were: *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896 (here the court only cited to the Guest Statute and the wilful or wanton requirement in passing while addressing a sufficiency of the evidence argument); *Andis v. Newlin* (1982), Ind., 442 N.E.2d 1106 (court recited the three elements as found in *Clouse v. Peden, supra* and *Brown v. Saucerman, supra,* and emphasized that mere negligence or carelessness is insufficient to show wanton misconduct).

at all, nor can we say that these decisions are in conflict with that requirement so as to give rise to an overruling by implication.[5] *See Roberts v. Chaney* (1984), Ind. App., 465 N.E.2d 1154 (in this case decided after the two Supreme Court cases cited by the Mitchells the First District continued the application of the adverse attitude or perverseness language). The trial court's instruction number 18 on adverse attitude is not erroneous.[6]

## II.

The Mitchells contend that it was error for the trial court to refuse to give their tendered instruction on the standard of care applicable to this case, which read:

"In judging the conduct of the driver, the jury is bound to apply the same standard to a minor as the jury would apply to an adult even though the minor was 16 years of age and had just recently obtained his driver's license. The fact that the driver is a youth and that wanton impulses may be natural to young people does not excuse a minor driver of his misconduct. Neither does immaturity excuse a driver's failure to contemplate the consequence of his act. The Indiana statute does not provide that a jury should place one construction on the statute as applied to young people and another as to adults. Therefore, in determining whether the driver of a motor vehicle had knowledge that injury would probably result from his wanton misconduct, *responsibility for such knowledge must be measured by the standard with which reasonable men of ordinary intelligence are chargeable under the circumstances.* Under Indiana statutes, no

person, young or old, can operate an automobile on the public highway, in a manner controlled by wanton impulse or motive, under conditions known likely to produce injury, without being legally responsible to his guest for injury caused thereby." (emphasis in original)

The Turners' response to this allegation of error is that there was never any issue as to what standard of care applied in this case. The trial court instructed the jury as to the law of the case without any distinction based upon Curtis Turner's age.

The three-pronged standard by which we review a trial court's refusal to give a tendered instruction requires us to consider: (1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support the giving of that instruction, and (3) whether the substance of that instruction is covered by the other instructions given. *Shull v. B.F. Goodrich Co.* (1985), Ind. App., 477 N.E.2d 924, 926; *Hogston v. Schroyer* (1983), Ind.App., 449 N.E.2d 291, 293; *Hahn v. Ford Motor Company* (1982), Ind.App., 434 N.E.2d 943, 955.

If the Mitchells' tendered instructions were read as simply applying an adult standard of care to a minor engaged in an adult activity such as driving, we would have to conclude that such an instruction correctly states the law. *Sausaman v. Leininger* (1957), 237 Ind. 508, 146 N.E.2d 414; *Barrow v. Talbott* (1981), Ind.App., 417 N.E.2d 917, 923–24; *Fuller v. Wiles* (1972), 151 Ind.App. 417, 280 N.E.2d 59.

It must be noted, however, that a trial court can refuse a tendered instruction without committing error when the

---

5. The Mitchells cited 20 Am.Jur.2d *Courts* Section 232 (1965) for the proposition that later decisions may overrule prior decisions which *conflict* with it. However, the adverse attitude or perverseness "guideline" is essentially a restatement of the mental element necessary to recover under the Guest Statute. *Sili v. Vinnedge, supra.* There is quite simply no conflict between the two recent Supreme Court decisions and the long line of precedent adhering to the adverse attitude or perverseness requirement. Furthermore, we believe "an intention to overrule a number of longstanding precedents

should be expressed in plain and explicit terms...." 20 Am.Jur.2d *Courts* Section 232 at p. 561 (citations omitted).

6. We note that usually the adverse attitude language is presented in the same instruction outlining the elements necessary to prove wanton misconduct and the guidelines often given to aid in the evaluation, but certainly one instruction need not contain all the law of a case. *Martin v. Roberts, supra.*

instruction is misleading or confusing. *Rohrkaste v. City of Terre Haute* (1984), Ind.App., 470 N.E.2d 738, 744; *Cartwright v. Harris* (1980), Ind.App., 400 N.E.2d 1192. Furthermore, "an instruction may be misleading if it is one-sided." *Rohrkaste, supra* at 744 (citing *Cartwright v. Harris, supra*).

■ The most objectionable portion of the Mitchells' standard of care instruction is the second sentence wherein the jury would be told, "that wanton impulses may be natural to young people does not excuse a minor driver of his misconduct." This instruction would allow the jury to infer "wanton impulses" from youthfulness, when wanton misconduct is the central issue in this case. Although we recognize that the thrust of this sentence is to prevent the jury from excusing a minor's wanton misconduct because of his youth, the manner in which this sentence is written could easily mislead or confuse the jury nonetheless.[7]

Additionally, the Mitchells have failed to show that the refusal to give this instruction was prejudicial or that a presumption of prejudice was warranted. *Hartford Acc. & Indem. Co., Hartford, Conn. v. Armstrong* (1955), 125 Ind.App. 606, 127 N.E.2d 347. The Mitchells argue they were prejudiced because the jury would naturally take into consideration the youth and inexperience of Curtis Turner when evaluating his conduct. We cannot agree. The "adult" standard of care was applied throughout the instructions. Moreover, we believe driving is viewed as an adult activity and even though a minor can be licensed to drive, it is not expected that the rules and regulations applicable to him will be any different from those applied to adults. On the road a minor is treated the same as any other driver. We are not convinced that a reasonable juror would apply a standard of care any different than that applied to other drivers.[8]

### III.

Next, the Mitchells argue that it was reversible error for the trial court to instruct the jury concerning negligence standards in two separate instructions. Instruction number 13 states:

"You are instructed that the violation of any Indiana motor vehicle statute in full force and effect, at the time and place in question, without justification or excuse, constitutes negligence."

Instruction number 14 states:

"Defendants [sic] further instruct you that if you should find by a fair preponderance of the evidence that the occurrence in question was proximately caused by the combined negligent driving of Dalton and the defendant Curtis Turner, then your verdict may be in favor of the defendant Turner."

The Mitchells argue that instruction number 13 is misleading because violation of a motor vehicle statute coupled with knowingly taking a risk can constitute wilful or wanton conduct. In their view the jury could be misled into thinking that Curtis Turner was only negligent in light of evidence indicating he plead guilty to a failure to yield charge. We must disagree.

---

**7.** Although it might have been preferable for the trial court here to excise the objectionable portions of this instruction to get the Mitchells' standard of care instruction before the jury, "unless it is the duty of the court to give the instruction precisely as requested, it does not commit error by refusing to submit the instruction to the jury." *Mullins v. Bunch* (1981), Ind., 425 N.E.2d 164, 166.

**8.** We were able to find only one case which dealt with the same circumstances. In *Sanders v. Pitner* (Wyo.1973), 508 P.2d 602, the court discussed, in dicta, the decision of the trial court to refuse an instruction expressly holding a minor to an adult standard of care under Wyoming's Guest Statute. The *Sanders* court concluded that the use of such words as "ordinarily prudent person," "reasonably prudent person," and the "no person" language in the statute coupled with the fact that no mention was made of any distinction or lesser standard for minors supported the trial court's refusal. Similarly, the Indiana Guest Statute uses language such as "owner or operator" and "person." Other instructions referred to the "operator of a motor vehicle," "driver," and "motorist" without any reference to age. *See* instructions numbered 8, 11, 16, 17, 19 and 20.

■ In *Sidle v. Majors* (1976), 264 Ind. 206, 341 N.E.2d 763 at 775, our Supreme Court discussed the relationship between negligence and the Guest Statute, concluding:

> "Negligence alone is not enough, but depending upon the circumstances surrounding the acts or omissions causing the injury, it may evidence the wilfulness or wantonness required by the statute. It is the conscious indifference to the consequences that renders conduct wilful or wanton. That the defendant might have been negligent, therefore, does not preclude the possibility that he might also have been wilful and wanton, as those terms have been defined in context with our guest statute. That is a question for the jury to determine under proper instructions from the court."

Hence, even were the jury to conclude that Curtis Turner was negligent, that would not preclude a further finding that because of his mental state at the time he was also guilty of wilful or wanton misconduct and liable under the Guest Statute. Taken as a whole the instructions clearly informed the jury that the central issue in this case was whether or not Curtis Turner's conduct was wilful or wanton under the Guest Statute.[9]

■ The Mitchells also objected to instruction number 14. They argue that it, together with instruction number 13, create

an inference that the negligent driving of truck driver Dalton is a defense to Curtis Turner's liability under the Guest Statute. We do not agree with this assessment. When considered as a whole the instructions advised the jury that Turner would be liable for wilful or wanton misconduct, but not for mere negligence.

## IV.

■ The Mitchells argue that it was error for the court to refuse to give their tendered instruction number 2, which read:

> "Wanton is defined as follows:
>
> '... undisciplined; not susceptible to control; ... excessively merry or gay; sportive; frolicsome; ... marked by or manifesting arrogant recklessness of justice, or the rights or feelings of others....'
>
> An adverse attitude need not be hostile or consciously abusive. An undisciplined and sportive manner coupled with arrogant recklessness will satisfy the statutory requirement of wanton misconduct, if, under the known existing circumstances, injury will probably result therefrom.
>
> It is not necessary to show that the driver is motivated by malice, ill will, or a specific intent to injure."

Inasmuch as the substance of this instruction was adequately covered in four other instructions,[10] there was no error commit-

---

9. The Mitchells rely on *Stillwell v. Adams* (1963), 135 Ind.App. 495, 193 N.E.2d 74, for the proposition that instructing as to negligence in a guest statute case is prejudicial error. However, an examination of the *Stillwell* case indicates some important variances from the case at bar. In *Stillwell* the negligence instruction was a preliminary instruction issued before the trial began and concluded that negligence alone *would be* a sufficient basis upon which the jury could assess liability against the host driver. Such an instruction is clearly erroneous and prejudicial. Upon reading the instructions as a whole in this case we cannot say that the negligence instructions found in this case could have led the jury to the improper conclusion that if Curtis Turner was negligent he could *not* have been found liable for wilful or wanton conduct also.

10. Instruction number 7 reads:

"Wanton or willful misconduct means a course of action which shows an actual or deliberate intention to cause injury or;

A course of action on part of the defendant which, under existing conditions, shows either an utter indifference or conscious disregard for the safety of others."

Instruction number 19 reads:

"A jury may determine that a driver's conduct is 'wanton' if it finds that the driver made an impulsive decision to turn left while proceeding at a high rate of speed, with reckless indifference for the safety of his passengers. That would be true if the driver knew or should have known that their conduct subjected the passengers to a probability of injury."

Instruction number 20 reads:

"A driver's conduct is 'wanton' if he consciously persists in an undisciplined and sportive manner and with arrogant recklessness as to the rights and feelings of his guest who had entrusted himself to the driver's safekeeping.

ted in denying the Mitchells' definition of wanton.

The Mitchells contend the court was in error in that the language "not susceptible to control, excessively merry or gay or frolicsome" included in their definition cannot be found in any of the instructions given. However, neither was there evidence presented that Turner was driving in an excessively merry, gay or frolicsome manner. The trial court committed no error in refusing this instruction.

### V.

The Mitchells allege that the trial court committed error by instructing the jury on the elements of wilful misconduct in the court's instruction number 21, when the issue in the case was that of wanton misconduct only. Instruction number 21 reads:

> "I instruct you that the plaintiff, Keith Mitchell, was a guest in the defendant's vehicle and subject to the Indiana Guest Statute on the date of the accident in question. Therefore, the plaintiff, in order to recover has the burden of proving willful or wanton misconduct on the part of the defendant, Curtis Turner.
>
> Plaintiff, Keith Mitchell, in order to establish willful misconduct, must establish a course of action on the part of the defendant, Curtis Turner which shows an intentional engaging in misconduct, the probable result of which would be injury to Keith Mitchell.

> In order to establish wanton misconduct, the plaintiff, has the burden of proving with regard to the defendant, Curtis Turner:
>
> 1. That Curtis Turner was conscious of his misconduct.
> 2. That Curtis Turner was motivated by a desire to assert himself or his interests above and beyond or in reckless indifference for the safety of the plaintiff.
> 3. That Curtis Turner had actual knowledge of the danger which was confronting the plaintiff and that the plaintiff would probably be injured.
>
> An error in judgment or a mistake, standing alone, or negligent driving on the part of the defendant does not amount to willful or wanton misconduct.
>
> In determining whether or not the plaintiff has established the required proof of willful or wanton misconduct on the part of the defendant, you may consider the entire course of conduct of defendant during all times at issue."

█ It is clear from a reading of all the instructions that references were made repeatedly to phrases such as "wanton or wilful misconduct," "wilful and wanton conduct" and "wanton, wilful or reckless conduct."[11] The Mitchells themselves utilized the term "wilful" in three of their tendered instructions which were adopted by the trial court. The trial court in instruction number 21 gave an accurate account of the difference between wilful misconduct and wanton misconduct which, if

---

Therefore, 'wanton' conduct need not be hostile or conspicuously abusive or intentionally injurious. An undisciplined and sportive manner coupled with an arrogant recklessness will satisfy the statutory requirement of wanton misconduct if, under the known existing circumstances, injury will probably result therefrom. It is not necessary to show that the driver is motivated by malice, ill will or a specific intent to injure."

Instruction number 21 reads in part:

"In order to establish wanton misconduct, the plaintiff, has the burden of proving with regard to the defendant, Curtis Turner:

1. That Curtis Turner was conscious of his misconduct.

2. That Curtis Turner was motivated by a desire to assert himself or his interests above and beyond or in reckless indifference for the safety of the plaintiff.

3. That Curtis Turner had actual knowledge of the danger which was confronting the plaintiff and that the plaintiff would probably be injured."

11. The phrase "wanton or wilful misconduct" was used in instructions numbered 7, 8 and 9. The phrase "wilful and wanton conduct" was used in instruction number 10, which was tendered by the Mitchells. Finally, the phrase "wanton, wilful or reckless conduct" was used in instructions numbered 22 and 23, which were both tendered by the Mitchells.

anything, would have clarified rather than confused for the jury the distinction between the two phrases.

The Mitchells also contend that instructing as to the necessary proof for wilful misconduct prejudiced them by leading the jury to believe that the Mitchells had to show wilful misconduct before they could recover. We cannot agree with this proposition since the charge to the jury as to burden of proof was clearly phrased in the alternative.

> "Therefore, the plaintiff, in order to recover has the burden of proving wilful or wanton misconduct on the part of the defendant, Curtis Turner." (emphasis supplied)

Although under the evidence the trial court could have excised from its instructions the "wilful" aspect of the claim,[12] it did not commit harmful error in failing to do so. Since the jury could not have been misled by the inclusion of this discussion, any error must be considered harmless. *Spratt v. Alsup, supra.*

### VI.

Finally, the Mitchells argue that the trial court erred by rejecting the final three paragraphs of their tendered instruction number 9, the first paragraph of which the trial court adopted as court's instruction number 10. The adopted portion read as follows:

> "You are instructed that a person may bring an action against any one or all of those persons whose conduct has contributed to his injury. The fact that another person's negligence has also contributed to the injuries of the guest may not be raised as a defense by the host driver if the host's wilful and wanton conduct was a proximate cause of the injuries. The wilful and wanton conduct of the defendant in this case need not be the sole proximate cause but it is only required that it be a proximate cause of the inju-

ries to the plaintiff in order for the plaintiff to recover against the host driver."

The additional paragraphs which the court deleted were merely an amplification of the law expressed in the portion given. They added no different or additional propositions of law. Since the paragraph given adequately covered the law, it was not error to delete the remainder of the instruction as tendered by the Mitchells.

While the instructions may not constitute a model for the trial of such actions, they fully and fairly advised the jury. The court committed no prejudicial error.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

---

**12.** There was no motion to dismiss or for judgment on the evidence as to the claim of wilfullness.