William A. SANDERS, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 45A03–0107–PC–232.

Court of Appeals of Indiana.

March 6, 2002.

---

Susan K. Carpenter, Public Defender of Indiana, William D. Polanksy, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, William Sanders (Sanders), appeals the denial of his Petition for Post–Conviction Relief.

We affirm.

### ISSUES

Sanders raises three issues on appeal, which we restate as follows:

1. Whether the post-conviction court erred in denying relief when the trial court's instruction on attempted murder failed to require a finding of specific intent to kill.

2. Whether the post-conviction court erred in denying relief when the jury instructions on voluntary manslaughter and attempted voluntary manslaughter made sudden heat an element to be proven by the prosecution, and trial counsel tendered an instruction stating that the prosecution must prove beyond a reasonable doubt the absence of sudden heat, but it was refused.

3. Whether he received ineffective assistance of trial and appellate counsel.

### FACTS AND PROCEDURAL HISTORY

On March 8, 1990, the State filed an information against Sanders charging him with Count I, murder, a felony, Ind.Code

§ 35–42–2–1 and Count II, attempted murder, a Class A felony, Ind.Code § 35–42–2–1 and Ind.Code § 35–41–5–1. We adopt the statement of facts as set forth in *Sanders v. State*, No. 45 A03–9104–CR–112, 580 N.E.2d 380 (Ind.Ct.App. October 9, 1991). The facts are as follows:

> The evidence at trial disclosed that on the night in question Sanders had driven his longtime girlfriend, Sharon Pratchett, and their son to a hospital so the boy might be treated for an illness. While at the hospital Sanders and Pratchett began to argue, and the argument continued as they began to drive back to Pratchett's house. Sanders began hitting Pratchett in the face and at one point grabbed her by the hair to prevent her from jumping from the car. He told her that when they got to 25th and Chase Street he was going to kill her.
>
> As they were moving Pratchett grabbed the boy and jumped from the car. Neither was seriously hurt by this action. Sanders, however, turned his car around and came back. He crossed over into the lane where Pratchett and the boy were and ran over both of them with his car. He then drove away. Pratchett was seriously injured and the boy was killed.

*Id.* at 2.

On November 26–28, 1990, Sanders was tried by jury. On November 28, 1990, Sanders was found guilty of Count I, murder and Count II, attempted murder. On December 17, 1991, the trial court sentenced Sanders to forty (40) years on Count I and twenty-five (25) years on Count II. The trial court also ordered that these sentences be served consecutively. On January 16, 1991, Sanders filed his direct appeal. On October 9, 1991, this court affirmed the judgments of conviction and sentences imposed on Sanders.

On January 19, 1994, Sanders filed his Petition for Post–Conviction Relief. Subsequently, on October 24, 1997, Sanders' counsel amended the petition. This petition was denied on November 10, 1998 based upon a finding of laches. The denial of laches was reversed on appeal on October 24, 2000. Pursuant to that reversal, the case was remanded to the trial court, and a hearing on the merits was held on February 20, 2001. On May 21, 2001, the post-conviction court filed its Findings of Fact and Conclusions of Law denying the Petition for Post–Conviction Relief.

This appeal followed.

## DISCUSSION AND DECISION
### I. Post–Conviction Relief Standard of Review

■ Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post Conviction Rule 1, § 5; *Barker v. State*, 622 N.E.2d 1336, 1337 (Ind.Ct.App.1993), *trans. denied.* To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads only to a conclusion opposite that of the trial court. *Id.*

■ The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *McBride v. State*, 595 N.E.2d 260, 262 (Ind.Ct.App., 1992), *trans. denied.* If an issue was available on direct appeal but not litigated, it is waived. *Id.*

■ An exception to the doctrine of waiver arises when errors are so blatant and serious that to ignore them would constitute a denial of fundamental due process, i.e., fundamental error. *Id.* The fundamental error doctrine permits a review-

ing court to consider the merits of a waived issue if the reviewing court finds that the error was so prejudicial to the rights of the appellant that he could not have had a fair trial. *Owens v. State,* 543 N.E.2d 673, 675 (Ind.Ct.App.1989).

## II. Jury Instructions

### A. Attempted Murder Jury Instruction

■ The first issue raised for our review is whether the trial court properly instructed the jury on the elements of attempted murder. Sanders argues that the instruction given to the jury by the trial court represented fundamental error because it failed to inform the jury that in order to be found guilty of attempted murder, he must have had specific intent to kill the victim.

■ Although the validity of various attempted murder instructions has received diverse treatment by reviewing courts, our supreme court has established a central rule of law that may be applied retroactively. *See Simmons v. State,* 642 N.E.2d 511, 513 (Ind.1994). This rule of law requires a jury instruction to state that in order to convict a defendant of attempted murder, the jury must find that the defendant intended to kill the victim while taking a substantial step toward such a killing. *Spradlin v. State,* 569 N.E.2d 948, 950 (Ind.1991). Therefore, an instruction that purports to set forth the elements required for the jury to convict a defendant of attempted murder must include an explanation that the act must have been done with the specific intent to kill. *Id.*

At the close of Sanders' trial, the trial court gave the following instruction:

INSTRUCTION NO. 8

The crime of attempted murder in part is defined as follows:

A person who knowingly or intentionally kills another human being commits mur-

der, a felony. A person attempts to commit a crime when, acting with the culpability required for the commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit murder is a Class A felony.

To convict the defendant of the crime of attempted murder, the State must have proved the following elements:

1. The defendant knowingly or intentionally

2. took a substantial step to accomplish

3. a knowing or intentional killing of Sharon Pratchett.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of attempted murder, a Class A felony.

(Appellant's Appendix at 17–18).

■ We note at the outset that Sanders never objected to the attempted murder instruction. Usually, the failure to object to an instruction in a timely fashion results in waiver of this for review. *See McBride,* 595 N.E.2d at 262.

■ However, Sanders attempts to avoid waiver of this issue by claiming that the attempted murder jury instruction constituted fundamental error. The doctrine of fundamental error applies in an extremely narrow set of circumstances. *Owens v. State,* 543 N.E.2d 673, 675 (Ind. Ct.App.1989). The fundamental error doctrine permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that the error was so prejudicial to the rights of the appellant that he could not have had a fair

trial. *Stewart v. State,* 567 N.E.2d 171, 174 (Ind.Ct.App.1991).

■ The *Stewart* decision reiterated that instruction errors have been held to be fundamental where the trial court has failed to advise the jury of one of the elements of the offense. *Id.* In *Swallows v. State,* 674 N.E.2d 1317, 1318 (Ind.1996), our supreme court found that erroneous attempted murder instructions that omitted the element of intent to kill did not constitute fundamental error, because the defendant's intent to kill was not a central issue at trial. *Id.* at 1318. A reversal of an attempted murder conviction, despite a *Spradlin* error, is not required if either the intent of the perpetrator is not a central issue at trial or the instructions as a whole sufficiently suggested the requirement of the intent to kill. *Ramsey v. State,* 723 N.E.2d 869, 872 (Ind.2000); *Swallows,* 674 N.E.2d at 1318.

Turning to the present case, the error in the attempted murder instruction does not rise to the level of fundamental error. Here, the State presented sufficient evidence to sustain Sanders' conviction for attempted murder. The evidence shows that Sanders told Sharon Pratchett (Pratchett) he was going to kill her. The Record further reflects that after Pratchett and W.A.H., Jr., Sanders' and Pratchett's son, jumped from Sanders' car, they sat beside the street and were illuminated by the headlights of two cars. According to eyewitnesses, Sanders turned his car around, traveled north in the southbound lane, and veered his car in order to run over Pratchett and W.A.H., Jr. Indeed the law of this case, as found in the direct appeal, is that "... the evidence clearly

supported the proposition that Sanders intended to kill Pratchett."[1] *Sanders,* No. 45 A03–9104–CR–112, slip op. at 3.

The only intent that was the subject of dispute at trial was the transfer of Sanders' intent to kill Pratchett to W.A.H., Jr. As previously stated, when a fundamental error in the instructions has been established by failure to include an element, reversal is not automatic. *See Ramsey,* 723 N.E.2d at 872. Sanders has not shown that he was harmed by the error to such an extent that he was denied fundamental due process at his trial. *See Stewart,* 567 N.E.2d at 174. Nor has he shown that the element missing from the instruction was also missing from the evidence. As we noted in our memorandum decision on direct appeal, the evidence clearly supported the proposition that Sanders intended to kill Pratchett and in attempting to do so he actually killed W.A.H., Jr. *Sanders,* No. 45 A03–9104–CR–112, slip op. at 3. The existence of the omitted element of intent is so well established in the Record that the trial court's failure to instruct the jury on the specific intent element in the attempted murder instruction is harmless error. Accordingly, we find that the absence of the specific intent element from the attempted murder instruction does not rise to the level of fundamental error because there was no question that Sanders intended to kill Pratchett.

Moreover, Sanders' intent to kill Pratchett was addressed in another instruction to the jury. INSTRUCTION NO. 6 informed the jury of the doctrine of transferred intent, as follows:

> When one intends to kill a certain person and by mistake or inadvertence kills

---

1. Chief Judge Brook's dissent .posits that Sanders' blackout defense made his intent "the only issue." However, Sanders' unilateral claim in the face of evidence of his conduct, the direct verbal threat immediately pri-

or to the act, and the deliberateness required to guide his car into the persons on the curb and then drive away, does not create an issue as to intent.

another person, in the eyes of the law, his intent is transferred from the person to whom it was directed to the person actually killed. It is not a defense that the defendant intended to kill Sharon Pratchett but instead killed [W.A.H., Jr.].

(Appellant's Appendix at 28). This instruction effectively informed the jury that Sanders' intent to kill Pratchett transferred to the death of W.A.H., Jr. This rendered Sanders' act against W.A.H., Jr. to be murder. Therefore, the above instruction informed the jury that Sanders had the specific intent to kill Pratchett. Thus, we hold that the attempted murder instruction, although improper under *Spradlin,* did not amount to fundamental error mandating a reversal of Sanders' conviction.

### B. Voluntary Manslaughter Jury Instructions

Next, Sanders claims that the trial court committed fundamental error by failing to properly instruct the jury on the elements of voluntary manslaughter and attempted voluntary manslaughter. Specifically, Sanders argues that the trial court erred in denying trial counsel's tendered instruction stating that the prosecution must prove the absence of sudden heat beyond a reasonable doubt before there can be a conviction for murder as opposed to voluntary manslaughter.

This court has held that jury instructions are within the discretion of the trial court and will only be reversed on a showing of that discretion. *Geiger v. State,* 721 N.E.2d 891, 894 (Ind.Ct.App. 1999). If the instructions considered as a whole fully and fairly instruct the jury, an error in any particular instruction will not justify a reversal unless it is such as to vitiate the whole charge to the jury. *Mitchell by Mitchell v. Turner,* 484 N.E.2d

967, 969 (Ind.Ct.App.1985). The charge is vitiated only when the instruction is so erroneous that it must be concluded the jurors have been misled as to the law of the case. *Id.*

In reviewing the trial court's refusal to give tendered instructions, a three-part inquiry must be undertaken to determine: (1) whether the tendered instruction is a correct statement of law, (2) whether there is evidence in the record to support the instruction, and (3) whether the substance of the instruction is covered by other instructions given by the court; even if inquiry is answered in the affirmative, reversal will not result unless failure to give the instruction substantially and adversely affected the rights of the complaining party so as to quite likely have affected the result. *Miller v. Ryan,* 706 N.E.2d 244, 247 (Ind.Ct.App.1999), *trans. denied.*

Additionally, if an issue was available on direct appeal but not litigated, it is waived. *McBride,* 595 N.E.2d 260, 262 (Ind.Ct.App. 1992), *trans. denied.* However, the doctrine of fundamental error permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that the error was so prejudicial to the rights of the appellant that he could not have had a fair trial. *Owens,* 543 N.E.2d at 675.

In the instant case, the jury was instructed as follows:

INSTRUCTION NO. 4

COUNT I

Included in the offense charged in the information in Count I is the crime of voluntary manslaughter, which is defined as follows:

A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony.

The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under this chapter to voluntary manslaughter.

To convict the defendant of voluntary manslaughter, the State must have proved each of the following elements:

1. The defendant knowingly or intentionally

2. killed [W.A.H., Jr.] a/k/a [W.A.P.]

3. while acting under sudden heat.

If the State failed to prove each of these elements beyond a reasonable doubt, the defendant should be found not guilty. If the State did prove each of these elements beyond a reasonable doubt, then you should find the defendant guilty of voluntary manslaughter, a Class B felony.

(Appellant's Appendix at 26).

### INSTRUCTION NO. 10
### COUNT II

Included in the charge in this case is the crime of attempted voluntary manslaughter which is defined by statute as follows:

A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony. The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under this chapter to voluntary manslaughter. A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit voluntary manslaughter is a Class B felony.

To convict the defendant of the crime of attempted voluntary manslaughter, the State must have proved the following elements:

1. the defendant knowingly or intentionally

2. took a substantial step to accomplish

3. a knowing or intentional killing of Sharon Pratchett while acting under sudden heat.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of attempted voluntary manslaughter, a Class B felony.

(Appellant's Appendix at 32).

■■■ With the above in mind, we find that the trial court's instructions on voluntary manslaughter and attempted voluntary manslaughter were erroneous in that they indicated that sudden heat was an element of these offenses. However, a jury instruction that incorrectly includes sudden heat as an element of voluntary manslaughter is not fundamental error when the instruction also explains that sudden heat is a mitigating factor that reduces murder to voluntary manslaughter. *Wilcoxen v. State*, 705 N.E.2d 198, 203 (Ind.Ct.App.1999); *Isom v. State*, 651 N.E.2d 1151, 1153 (Ind.1995). In the present case, the jury instructions for voluntary manslaughter and attempted voluntary manslaughter included sudden heat as an element of the offense, but also informed the jury that sudden heat is a mitigating factor that reduces what would be murder to voluntary manslaughter. Accordingly, we conclude that the jury instructions for voluntary manslaughter and attempted voluntary manslaughter do not constitute fundamental error. Thus, the trial court did not abuse its discretion in refusing to give the trial counsel's tendered instruction because the instructions

were correct and adequately instructed the jury on voluntary manslaughter and attempted voluntary manslaughter. *See Miller*, 706 N.E.2d at 247.

## III. Ineffective Assistance of Counsel

### A. Standard of Review

■ The standard by which we review claims of ineffective assistance of counsel is well settled. In order to prevail on a claim of this nature, a defendant must satisfy a two prong test: (1) a showing that counsel's performance fell below an objective standard of reasonableness based upon prevailing professional norms, and (2) a showing that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind.1997).

■ Judicial scrutiny of counsel's performance is highly deferential, and the reviewing court presumes that counsel's conduct falls within the wide range of reasonable professional assistance. *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind.1997), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). Counsel's performance is rarely found ineffective when the issue is his failure to raise a claim on direct appeal. *Id.* at 193. Deficient performance is only found if the ignored issues are clearly stronger than the issues presented on direct appeal. *Id.*

[17, 18] However, we need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish prejudice, one must first demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the pro-

ceeding would be different. *State v. Holmes*, 728 N.E.2d 164, 172 (Ind.2000).

### B. Ineffective Assistance of Trial Counsel

■ Sanders argues that he received ineffective assistance of trial counsel. Specifically, Sanders asserts that his trial counsel was ineffective because he failed to object to the jury instruction for attempted murder.

Trial counsel's failure to object to the attempted murder instruction does not constitute ineffective assistance of counsel. The instruction given to the jury in the present case was virtually identical to the instruction found, and approved by our supreme court in *Santana v. State*, 486 N.E.2d 1010, 1011 (Ind.1986). The *Santana* case was not overruled until well after Sanders' trial and direct appeal. Therefore, we find that trial counsel's reliance on *Santana* should not be viewed as deficient performance because *Spradlin* and its progeny occurred after Sanders' trial.

Further, Sanders did not demonstrate that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Holmes*, 728 N.E.2d at 172. Thus, Sanders suffered no prejudice. Therefore, we hold that the failure of trial counsel to object to the trial court's attempted murder instruction did not cause trial counsel's performance to fall below the prevailing professional norm. *See Bieghler*, 690 N.E.2d at 192.

### C. Ineffective Assistance of Appellate Counsel

■ Sanders argues that he received ineffective assistance of appellate counsel. Specifically, Sanders contends that his appellate counsel was ineffective because he failed to raise the issue of erroneous jury instructions for voluntary manslaughter

and attempted voluntary manslaughter on appeal.

■ If an instruction is not fundamentally erroneous, then counsel is not ineffective for failing to object at trial, or failing to raise the issue on appeal. *Moore v. State*, 649 N.E.2d 686, 690 (Ind.Ct.App. 1995), *trans. denied.* Although we have determined that the inclusion of sudden heat as an element of the offenses was erroneous, when read as a whole with the other instructions and with the references to sudden heat describing it as a factor that could reduce murder to manslaughter, we have concluded that the instruction does not constitute fundamental error. *See Mitchell*, 484 N.E.2d at 969. Therefore, we find that Sanders did not receive ineffective assistance of appellate counsel.

## CONCLUSION

Based on the foregoing, we conclude that Sanders has not demonstrated that the evidence is without conflict and leads only to a conclusion opposite that of the post-conviction relief court. *See Barker*, 622 N.E.2d at 1337. Therefore, we conclude that Sanders' Petition for Post Conviction Relief was properly denied.

Affirmed.

MATHIAS, J., concurs.

BROOK, C.J., concurs in part and dissents in part with opinion.

BROOK, Chief Judge, dissenting as to issue II. A.

I respectfully dissent. I believe that the trial court's erroneous attempted murder instruction constituted fundamental error and that neither of the recognized exceptions apply. I would therefore reverse Sanders' conviction for attempted murder.

Both this court and our supreme court have repeatedly held that an instruction allowing a jury to convict for attempted murder upon anything less than proof of specific intent to kill is fundamental error. *See, e.g., Spradlin v. State*,[2] 569 N.E.2d 948, 950 (Ind.1991) ("Henceforth, we hold that an instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing."); *Simmons v. State*, 642 N.E.2d 511, 512–13 (Ind.1994) ("Although one may be guilty of murder, under our statute, without entertaining a specific intent to kill the victim, he cannot be guilty of attempted murder[.]") (*citing Smith v. State*, 459 N.E.2d 355, 358 (Ind.1984)).

Our supreme court has identified two factual situations in which a *Spradlin* error can be considered harmless:

> Instances of *Spradlin* error are not per se reversible. Indeed, we have held in some cases, typically post-conviction relief appeals, that error of this sort was not fundamental especially when the intent of the perpetrator was not a central issue at trial, or if the wording of the instruction sufficiently suggested the requirement of intent to kill.

*Metcalfe v. State*, 715 N.E.2d 1236, 1237 (Ind.1999) (citations omitted). I do not believe that either enumerated exception applies in the instant case.

The first *Spradlin* exception does not apply because Sanders' intent was at issue at his trial; indeed, it seems to have been the only issue. Sanders readily admitted to driving the car that night and never denied running over the victims, but he

---

**2.** Errors of this type are commonly referred to as *"Spradlin* errors."

testified that he had suffered from a blackout that rendered him unable to remember anything about the incident. He presented evidence that suggested that he was unable to form the specific intent to kill during his blackout. The fact that the jury was not convinced by this argument, or indeed even that his intent to kill was established by overwhelming evidence,[3] does not mean that his intent was not at issue.

Neither does the second *Spradlin* exception apply. I conclude that, read as whole, the instructions did not adequately inform the jury that it was required to find that Sanders specifically intended to kill Sharon Pratchett before it could convict him of attempted murder. The post-conviction court concluded that instruction number six, concerning transferred intent, cured the *Spradlin* error, but I disagree. Instruction six reads as follows:

> When one intends to kill a certain person and by mistake or inadvertence kills another person, in the eyes of the law, his intent is transferred from the person to whom it was directed to the person actually killed. It is not a defense that the defendant intended to kill Sharon Pratchett but instead killed [W.A.H.].

This instruction provides only that *if* the jury finds that Sanders intended to kill Sharon, *then* that intent may be transferred to the actual victim. Instruction six merely recites the doctrine of transferred intent and fails to instruct the jury that it *must* find that Sanders had the specific intent to kill before it can convict him of attempted murder. The *Spradlin* error remains uncured, and I would therefore reverse Sanders' conviction for attempted murder. In all other respects, I concur with the majority's disposition of the issues.

---

**3.** The majority seems to be attempting to create a new "overwhelming evidence" or "intent-to-kill-cannot-be-seriously-disputed" exception to *Spradlin*, concluding "that the absence of the specific intent element from the attempted murder instruction does not rise to the level of fundamental error because there was no question that Sanders intended to kill Pratchett." *Sanders v. State,* —— N.E.2d at ——. However, our supreme court, in *Swallows v. State,* 674 N.E.2d 1317 (Ind.1996), quite clearly held that there is no "intent-to-kill-cannot-be-seriously-disputed" exception to *Spradlin:*

> Judge Najam asks that we reexamine our decisions holding that in post-conviction attempted murder cases the failure to instruct

on specific intent constitutes fundamental error *even where the defendant's intent to kill cannot be seriously disputed.* While this holding has been attributed to our decisions, *our case law actually requires the opposite conclusion.*

*Id.* at 1318 (citations omitted) (emphases added). The supreme court's position is clear, and "[w]e are obliged to follow precedents established by the Indiana Supreme Court." *Patton v. State,* 507 N.E.2d 624, 626 (Ind.Ct. App.1987), *trans. denied* (1990). Whatever the potential merits of an additional "intent-to-kill-cannot-be-seriously-disputed" exception to *Spradlin,* "it is not the province of this court to address those concerns." *Id.*